Richardson vs. Tyson and others.

RICHARDSON, Respondent, vs. TYSON and others, Appellants.

*May 3 — May 21, 1901.*

*Guardian* ad litem: *Compensation: Disbursements: Employment of counsel.*

1. An attorney agreed to accept an appointment as guardian *ad litem* in a proposed suit, and conduct the litigation therein for his wards, for a specified sum in the trial court and for a like sum in the supreme court on appeal. After trial in the circuit court, he was paid the sum agreed upon for services in that court, and receipted in full therefor. Thereafter the opposing attorney was changed, and the guardian *ad litem's* right to appeal from a judgment adverse to his wards was opposed, and his motives impugned, and the general guardian of his wards attempted to secure his removal, and not only refused him aid but opposed all his efforts in behalf of his wards. The guardian *ad litem* nevertheless prosecuted his appeal, succeeded in reversing the adverse judgment, and vindicated and secured his wards' rights to real estate of large value. *Held*, that the guardian *ad litem* had been paid in full for his services in the trial court, but that he was entitled to compensation

Richardson vs. Tyson and others.

for services on the appeal, independent of the agreement, the circumstances being so changed from those contemplated when the agreement was made that he was not bound thereby.

2. Where a guardian *ad litem* deems it necessary to employ counsel to assist in the litigation, it is the better practice to apply to the court appointing him for leave to do so, and such court, in granting leave, should fix the amount that may be expended for that purpose, and, if such amount proves insufficient, the court, on being satisfied of the fact, may increase it. If the guardian *ad litem* employs counsel without such order, he assumes the peril that his disbursements therefor may be disapproved.

3. In such situation, however, where no order is made, if it appears that the employment of counsel was reasonably necessary for the welfare of the wards and such as the court would have authorized in advance had application been made, reasonable expenses in that regard should be allowed, to be paid out of the wards' estate.

4. Where a guardian *ad litem* acts fairly, makes full disclosures, and does not make unreasonable demands for credit or allowance, it is within the discretion of the court to allow him compensation for his services on the hearing of his account, and, when necessary, for attorney's fees paid by him on such hearing.

5. When vehement contention as to the services and disbursements of a guardian *ad litem* is made, a situation is presented of such extraordinary circumstances as warrants the employment by the guardian of a hired advocate to assist him, and in such case there is no absolute limit to the *power* of the court to allow, as a disbursement to such guardian, attorney's fees incurred therefor.

6. Services performed by an attorney employed by a guardian *ad litem* prior to a contest over the settlement of his accounts being such as the guardian himself was in duty bound to perform, no allowance can be made to the guardian therefor as a distinctive item of disbursement, but evidence of such services is admissible as bearing on the proper allowance to be made the guardian for his services.

7. A guardian *ad litem* being an officer of the court, his compensation is to be fixed by the standard of official emoluments, rather than by the highest prices demanded and paid between individuals free to contract as they will; and in arriving at a conclusion as to the correct allowance the opinions of others in the profession of law are advisory only, and though unanimous are not controlling.

APPEAL from an order of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Reversed.*

Appeal by general guardian from an order of the circuit court of Milwaukee county awarding compensation to *Hamilton P. Richardson* as guardian *ad litem*. In 1894 certain real estate, vested in Virginia C. Tyson, now Ruggles, for life, with remainder to such of her children as she might appoint by will, and, in default of children, to unascertained beneficiaries, the value of which was, in round numbers, $150,000, had become seriously embarrassed by the failure of the life tenant to keep down taxes and through the anticipation by her of the rents and profits, so that loss of the entire *corpus* of the estate was imminent. Her counsel, Mr. T. W. Spence, undertook to find some plan of relief. It first occurred to him that the trusts were invalid, so that Mrs. Tyson in fact held the fee, and he determined upon an application to the court for construction of the trust. He approached the respondent, a young lawyer of not very large practice or experience, but who had won Mr. Spence's confidence for ability, explained the situation to him, and proposed that he become the guardian *ad litem* for Mrs. Tyson's minor children, exhibiting to him Mr. Spence's own preliminary brief on the question of construction, and stating to him the expectation that they would desire to have the question ultimately passed upon by the supreme court; also explaining that he (*Richardson*) would be expected to thoroughly investigate and present the law as he found it in protection of the interests of the minors, which, technically at least, were adverse to the attempt to invalidate the trusts; and further explained that, as the estate was very poor, he desired an understanding of the extent of compensation which *Mr. Richardson* should receive for such services, and stated to him that he thought $250 as entire compensation for the services to be rendered by him in the circuit court, and another $250 in the supreme court, if the question went there, would, in view of the entire situation, be reasonable. To this *Mr. Richardson* assented, with the

thought, unexpressed, as he now states, that such sum was to be paid by the plaintiff, Mrs. Tyson, but that he would have a further claim in case he realized or preserved a fund for the minors. In the circuit court *Mr. Richardson* prepared and presented a very exhaustive brief, which is conceded by all parties to have very perfectly covered the ground and presented the considerations in support of the trust fully and ably, upon which, as he testifies, he spent substantially two months of time. The trust was declared void by the circuit court. *Mr. Richardson* was paid by Mr. Spence $250, for which he gave a receipt, acknowledging it to be in full for his services as guardian *ad litem* in that court. Thereafter Mrs. Tyson, having married, through the medium of her husband, was brought in contact with other counsel than Mr. Spence, who were inclined to rest on the judgment of the circuit court. *Mr. Richardson*, being convinced that the rights of the minors had suffered by the judgment, persistently urged that the original plan should be carried out, and that those starting the proceedings should take the question to the supreme court. Two years having expired and they not being inclined to do so, he asked that they waive the requirement of an undertaking and permit him to appeal on behalf of the minors, urging as a reason therefor that it was a proper case for all costs to be defrayed out of the estate. This request was promptly refused by Mrs. Ruggles's new counsel, with intimations approximating threats that any compensation to him for further protraction of the litigation would be strenuously opposed, in terms which were understood to impugn *Mr. Richardson's* motives. He, however, did appeal, without undertaking, and was promptly met by a motion on behalf of the plaintiff, Mrs. Ruggles, to dismiss the appeal, and on behalf of a then-appointed general guardian to dismiss him from his place as guardian *ad litem*. Upon this motion he prepared a brief, and, owing to the assault appar-

ently made upon his motives and compensation, and possibility of error in his views as to the merits, he deemed it proper to submit the situation to older counsel, and did submit it to Mr. James G. Flanders, who concurred in his views as to the rights of the minors, and who, at his employment, adopting his brief, argued the motion to dismiss the appeal and so remove him, in defeating which he was successful. *Tyson v. Tyson,* 94 Wis. 225. Thereafter *Mr. Richardson* wrote a brief and argued the case on the merits in this court. The brief embodied about forty pages, and consisted largely of the investigation made in circuit court, elaborated and perfected. He was entirely successful, this court holding the trusts valid and directing a dismissal of the bill. *Tyson v. Tyson,* 96 Wis. 59. We, however, denied motion that all costs be paid out of the estate. *Mr. Richardson* then presented a petition for an allowance for his services and expenses, to be charged as a lien upon the remainder, which he had conserved. His right to any compensation, and the power of the circuit court to pass upon it, were at once assailed by the general guardian, represented by the same counsel as before. The circuit court denied the petition, whereupon *Mr. Richardson* appealed to this court, where he was represented by counsel, Mr. Charles E. Monroe. That appeal also was decided in his favor, and the matter remanded with directions to the circuit court to ascertain and fix his compensation for services and expenses and to constitute the same a lien upon the remainder, to be foreclosed in the manner indicated. *Tyson v. Richardson,* 103 Wis. 397. In the course of *Mr. Richardson's* investigation of the power of the court to reach this remainder for the purpose of compensating him, he discovered authorities in support of the power of a court of equity, having before it an estate, to bind by its judgment all interests, although some of them were contingent, and their owners not yet ascertained. The principles of these authorities were subse-

Richardson vs. Tyson and others.

quently made the basis of a further procedure, in which *Mr. Richardson* did not participate, but which resulted in the accomplishment of Mr. Spence's original plan of disposing of the entire interest in a part of the land, and thereby producing a fund for the discharge of tax liens and the salvage of the balance of the property. *Ruggles v. Tyson*, 104 Wis. 500. After the decision in 103 Wis. 397, a trial was had upon the petition for allowance, in which *Mr. Richardson* continued to be represented by Mr. Monroe, and in which he was opposed by the general guardian, with counsel. The referee before whom the matter was tried fixed *Mr. Richardson's* total personal compensation at $3,000, less the $250 already paid him, and allowed him as disbursements $500 for Mr. Flanders's services, and $17.50 for traveling expenses, and also $650 for counsel fees of Mr. Monroe, with interest from July 19, 1897, when the petition for allowance was filed. Both parties moved for modification and change of the decision of the referee, and the circuit court, then presided over by a new judge, before whom *Richardson's* services had not been rendered, increased the allowance for personal compensation from $3,000 to $5,000, and added $50 to Mr. Monroe's counsel fees, to cover services on that motion,— all of which sums, with interest from the date fixed by the referee, amounted to $7,004.29 at the date of the order, October 30, 1900, which was adjudged to be a lien upon the interests of the remaindermen, and authorized to be foreclosed unless paid within a year. The appeal is from that order.

For the appellants there was a brief by *Rollin B. Mallory*, guardian *ad litem*, and oral argument by *Mr. Mallory* and *T. W. Spence*.

*Charles E. Monroe*, for the respondent.

DODGE, J. Many of the underlying principles upon which rest the rights of the claimant here, as also the limitations of those rights, are already decided, not only as the law of the state, but as the irrevocably adjudicated law of this

case, in *Tyson v. Tyson*, 94 Wis. 225, and *Tyson v. Richardson*, 103 Wis. 397. As most fundamental among these must be borne in mind that the infant is always the ward of every court wherein his rights or property are brought in jeopardy, and is entitled to most jealous care that no injustice be done him. The guardian *ad litem* is appointed merely to aid and enable the court to perform that duty of protection. *Cole v. Superior Court*, 63 Cal. 86, 89. By Circuit Court Rule IX, he must be an officer of that court, and .that official character both supports him in the performance of his duties and limits his rights and conduct. His duties are of the highest character, especially when, as now, he is an attorney at law, owing not only fidelity and wisdom, but also the duty of investigation of the legal rights of his ward and advocacy thereof. The performance of his important functions has already won for this claimant commendation from this court, and it is at the express wish of all of its members that the writer of this opinion reasserts approval of the loyalty to the wards' interests, the fearlessness and courage against severe opposition and at the sacrifice of personal comfort, and the distinguished industry and professional learning and ability which have characterized *Mr. Richardson's* performance of those official duties resulting from his appointment as guardian *ad litem* down to the time of presentation of his formal demand for compensation in the sum of $5,000.

Not less in measuring the proper allowance to a guardian *ad litem* out of the estate he conserves than in strengthening his arm to conserve it must the fact be considered that he is a public officer,— a trusted attorney, aiding his own court as an official duty cast upon him by its appointment, a duty which no lawyer can with propriety decline, even though it may be compensated inadequately or not at all. A duty of public service without such compensation as would be demanded for similar labors for individuals rests upon

all members of the community, and is cheerfully performed
in positions of all grades from jurymen and town supervis-
ors upward.  Especially has been recognized from earliest
times the duty of lawyers to aid their courts in the protec-
tion of the helpless or the oppressed without thought of
pecuniary benefit.  We have indulged in thus much of gen-
eralization as to the true attitude of a guardian *ad litem*,
which applies as well in some measure to other officers of
courts, such as trustees, receivers, and the like, to lead up to
the true rule which should guide courts in fixing the com-
pensation and expenses which should be allowed them.  As it
would be the duty of an attorney, however eminent, to defend
one accused of crime for the very moderate compensation
now fixed by statute, or for none at all if none were allowed;
as it is the duty, and, we are pleased to observe, the custom,
of attorneys to serve the court in disbarment proceedings
without compensation, so it is a professional duty to aid
the court as guardian *ad litem*, either without compensation
if the case requires it, or, when funds exist, for compensa-
tion to be measured by the standard of official emoluments,
rather than by that of the highest prices demanded and
paid between individuals free to contract as they will.  The
judge whom the claimant was called to aid was devoting
his learning and ability to the public service for pecuniary re-
ward wholly incommensurate to what the same industry,
learning, and ability would have commanded at the hands
of clients.  It is with such illustrations, rather than with
private contracts, that comparisons should be made in meas-
uring the allowance to claimant.  In another case (*Speiser
v. Merchants' Exch. Bank, ante*, p. 506), we have taken oc-
casion to point out the alarming tendency among officers
of courts, and even of the courts themselves, towards reck-
less demand and allowance of unreasonable and excess-
ive compensation out of funds within their grasp.  While
those remarks are far less applicable to the situation in this

case, we cannot but feel that reference to them is wise, to the end that courts may have continually in mind the peril of lapsing into the abuses mentioned.

The first contention made by appellant against the allowances to the claimant is that he is bound by contract to the sum of $500,— $250 for his services in circuit court, and a like sum in this court. The facts upon which this contention is predicated are substantially uncontroverted. They are set forth in substance in the accompanying statement of facts. *Mr. Richardson* does not dispute the accuracy of Mr. Spence's narrative of the conversation between them, nor the giving of the receipt in full upon the completion of the hearing in circuit court. We can see no escape from the conclusion that, by accepting the appointment in pursuance of that conversation, *Mr. Richardson* limited himself to the compensation of $250 for his services in the circuit court, which were performed in exact compliance with the arrangement so made. They were in no respect enhanced by any unexpected conduct on the part of others, and they were performed, and payment therefor accepted, without suggestion or intimation that he expected to receive for those services any other or further compensation. Nor did the language used by Mr. Spence fairly justify any such mental reservation or expectation as *Mr. Richardson* claims that he had, to the effect that, if a fund was found to exist and belong to his wards, he should be paid, in addition, a sum to be fixed by the court. In considering the reasonableness of this arrangement, it must not be forgotten that *Mr. Richardson* was then young in practice, with reputation for ability not widely established, and apparently without large and engrossing practice from which his attention and labors would necessarily be diverted to considerable pecuniary loss. The case was an important one, likely to attract attention, and presenting questions in the immediate line of *Mr. Richardson's* special studies, so that distinguished service therein

would be likely to be highly advantageous to him in establishing before the bar and the public his qualifications as a real-estate lawyer.   There seems to us no inherent improbability, in that situation, that he would have assented to Mr. Spence's proposal, and deemed it at least reasonably beneficial to himself.   We conclude, therefore, that for the services rendered in circuit court he must be held to have been paid in full, and to be not entitled to any further allowance.

At this point in the history of the case, however, the situation changed so entirely and radically from that within the contemplation of both *Mr. Richardson* and Mr. Spence that the arrangement as to rate of compensation for further services can have no application.   Instead of the action being brought to the supreme court by Mr. Spence without trouble or burden of liability to *Mr. Richardson,* the plaintiff, upon the advice of new counsel, determined to rest upon the judgment of the circuit court, which had denied to *Mr. Richardson's* wards any interest whatever in the real estate involved. For a period approximating two years, *Mr. Richardson* was, of course, thrown into a situation of doubt and uncertainty as to his duty, and still more as to how it could be performed. Convinced as he was of the existence of valuable rights in his minors, and that injustice had been done them by the decision of the trial court, yet he was confronted in that conclusion with the decision of Judge JOHNSON, an equity lawyer of high repute, and with the expressed opinion of counsel of large experience and brilliant reputation, all of which might well give pause to a lawyer of his youth and limited experience.   Again, he was without means to justify him in assuming the possible expenses attending an appeal, and, as he testifies, without relations with those who could furnish the necessary bond.   At this stage, too, he was met with what we cannot construe otherwise than as threats of assault upon the sincerity of his motives and upon his professional integrity should he persist in further litigating the question upon

Richardson vs. Tyson and others.

which judgment had been rendered, and was refused not only all aid in securing a decision from the ultimate tribunal, but any concessions or stipulations to remove obstacles in his path. When at last his convictions as to his ward's rights and his duty to further vindicate them triumphed over his reluctance to incur all of these obstacles, he was met by most strenuous efforts of him who had accepted, by appointment as guardian, the duty of promoting the legal rights of these minors to the utmost, to remove respondent from his position as guardian *ad litem*, and to dismiss his appeal from this court. Such things were not within the contemplation of any one when *Mr. Richardson* consented to present the rights of the minors in this court for a compensation of $250, and reversed the situation so entirely that we cannot hold him bound thereby, and therefore proceed to consider the proper measure of his compensation.

Appellant's counsel here presents two questions of law: First, he denies the right of a guardian *ad litem* under any circumstances to employ counsel at the expense of the estate, without previous order of court; and, secondly, power to impose any of the expenses of settling his account, especially the attorneys' fees in that proceeding. On neither of such contentions does the brief give us material aid. To the first are cited *Matter of Johnston*, 6 Dem. Sur. 355, and *Smith v. Smith*, 69 Ill. 308. The first of these merely declares the general practice of the surrogates in New York not to allow attorney fees to special guardians appointed on applications for administration. The latter decides in favor of the right of guardian *ad litem* to reimbursement of attorneys' fees if reasonable and reasonably necessary, although not expressly authorized. To this decision the court added, by way of caution:

"In such cases the better practice would seem to be, where the guardian *ad litem* is appointed and he believes that his ward has rights, for him to apply to the court for

leave to employ counsel; and the court should, in granting leave, fix the amount that might, if required, be expended for the purpose of the defense, which, if it, from the protracted litigation or otherwise, should prove insufficient, the court, on being satisfied of the fact, might increase the sum."

With this cautionary suggestion we entirely concur. The policy in this state, as indicated by Circuit Court Rule IX, is that attorneys be appointed to such position on the assumption that the guardian himself will be able to render the professional services necessary to any ordinary situation. Hence the employment of additional counsel can only be . justified by unusual or extraordinary circumstances. If the guardian takes such step without an order of court, he assumes the peril that it may be disproved, and he be left to bear the expense personally. Nevertheless, if, after the fact, it appears that such precaution was reasonably necessary for the welfare of the minors, and such as the court would have authorized in advance had application been made, no reason is apparent why the reasonable expense should not be allowed. Much the same considerations are involved as were suggested with reference to taking appeal in *Tyson v. Tyson,* 94 Wis. 225; *Hamacker v. Commercial Bank,* 95 Wis. 359, 362; *Thompson v. Phenix Ins. Co.* 136 U. S. 287, 294; *Cole v. Superior Court,* 63 Cal. 86; *Henry v. Henry,* 103 Ala. 582.

We cannot doubt that a situation presented itself in this case which made it very seemly and prudent that the guardian *ad litem* should invoke the aid of a lawyer of eminence, ability, and experience at the time Mr. Flanders was consulted. As we have pointed out already, *Mr. Richardson's* own judgment was in antagonism to the views of Judge Johnson, of Mr. Spence, and of Gen. Bragg. He was a young man, who had not extended experience by which to test the accuracy of his own reasoning and judgment, and might well hesitate, however clear his conclusions, to incur further labor

Richardson vs. Tyson and others.

and expense without confirmation from a lawyer able to supply those deficiencies. One subject to be discussed upon his appeal, as he had already been assured by Gen. Bragg, would be his own sincerity in moving it, thus rendering personal argument embarrassing and probably of lessened efficacy to his wards. In view of these considerations, and of Mr. Flanders's ability to procure the needed sureties for an appeal, we concur with the circuit court in approving reasonable expense for securing his services. As to the amount which should be allowed the guardian as a disbursement for Mr. Flanders's services, however, the action of the referee and the circuit court seems to us unwarranted by the record as now presented. Of course, we cannot, as between the counsel and his employer, even express an opinion of the reasonableness of the charge made, for Mr. Flanders is not a party and has had no opportunity to be heard, not even having been called as a witness. The services may, as intimated, have considerably exceeded what are described; but, such fact not being made to appear, we cannot consider it. We can only pass upon the amount of credit to *Mr. Richardson* for such services as he has proved to have been rendered, in the light of such knowledge as we may have of those in this court. No evidence of reasonable value was introduced on the trial below, and, since such as were proved to have been rendered came more fully under the observation of this than of the circuit court, no reason exists that we should not pass judgment upon them untrammeled by the finding of the referee and circuit court. The only services disclosed by the record outside of this court consisted in the examination and approval of *Mr. Richardson's* brief as to his right to appeal, and of his brief upon the merits of the construction of the deed under which the land was held. The claimant's testimony is that these briefs were submitted, and were returned by Mr. Flanders with his unqualified approval the same day; that the brief upon which the motions

Richardson vs. Tyson and others.

were heard in this court was written by *Mr. Richardson*, and adopted by Mr. Flanders. The only further service was the argument in this court, performed in a single day. It must be borne in mind that, while courts may approve after the fact that which it were better to have submitted for their approval in advance, they ought not to allow themselves to be affected by contracts which the guardian may have made to allow more than they would have allowed upon such preliminary application. Had the explanation been made in advance of the character of the services desired to be obtained from Mr. Flanders, such as they now appear by the record, we cannot believe that a contract to pay $500 would have been deemed necessary, or would have been approved. We are constrained to the view that one half of this amount, $250, is liberal allowance for expense necessarily incurred by the guardian for the service which he claims to have received, and that his charges against his wards should be limited to that sum.

The second rule of law contended for, namely, that a guardian *ad litem* can have no allowance either for services or, more especially, for attorney's fees paid in the hearing on his account, is not supported by the citation of any authorities, but the contrary seems well sustained when the officer acts fairly, makes full disclosure, and does not make unreasonable demands for credit or allowance. 2 Daniell, Ch. Pr. *1411; *Kingsbury v. Powers,* 131 Ill. 182, 198; *Clark v. Anderson,* 13 Bush, 111, 116; *Bendall's Distributees v. Bendall's Adm'r,* 24 Ala. 295, 305. This obviously must be so if the guardian is to receive fair compensation for services. It would be contradictory to fix such fair and reasonable compensation if the sum so fixed must be reduced to something less by imposing on him the necessary expense of passing his accounts,— a step which his duty requires. The question whether employment of an attorney on such hearing should be compensated out of the estate as an expense is a delicate one. Only under extraordinary condi-

Richardson vs. Tyson and others.

tions can it be proper. Usually, the guardian should be content to submit a plain statement of his services and disbursements to the court under which he has performed them, leaving to that court to fix the amount in the light of its own opportunity for observation and of any evidence it may desire. Ordinarily, vehement contention is not to be expected, and necessity for a hired advocate can hardly exist. Notwithstanding all these considerations, however, it still remains in each case a question for the court whether the extraordinary circumstances do exist to make necessary or proper such employment, and whether the services rendered by the attorney are merely those which the guardian might himself have rendered, or are such as, owing to the situation, he could not properly perform. There is no absolute limit on the *power* of the court to allow such disbursement; merely considerations restrictive of the exercise of its judgment and discretion. *Thompson v. Phenix Ins. Co.* 136 U. S. 287.

Considering, in the light of these views, the employment of Mr. Monroe, we find that the petitioner first presented his claim for allowance and compensation entirely in accord with the above suggestions, specifying no amount, but submitting the whole question to the court, upon a full and explanatory report, in July, 1897, and then devoted ten days to the investigation of the question of law whether that allowance could be made by the circuit court, and whether it could be so imposed as a lien upon the remainder in the real estate as to enforce its payment,— a field of inquiry which the court must investigate, and in which aid from the guardian was due and necessary. This petition was denied, as already stated, and an appeal taken to this court. At substantially this stage Mr. Monroe's retainer came about. As to that *Mr. Richardson* testifies:

" I employed Mr. Monroe, with whom at that time I was in partnership, to take exclusive charge of this proceeding, for the reason that I was about to go away for an indefinite

Richardson vs. Tyson and others.

period, and be absent from the state, and also for the reason that, it being a matter in which I personally was interested, I thought it advisable to have it in charge of another attorney."

He elsewhere testified that an additional consideration was the character of the opposition to this account, which had developed out of the appointment of Mr. Mallory as general guardian, and the employment by him in that capacity of an attorney who had declared vehement antagonism to any allowance in favor of the guardian *ad litem*. Mr. Monroe wrote the brief, argued the appeal in this court, and, after the *remittitur*, conducted the trial before the referee and argument before the circuit court upon this petition for allowance, and presents a bill of $500 for his services up to the commencement of the hearing before the referee, and of $150 in that hearing, to which $50 was added by the court for the argument upon the referee's report. In the light of this evidence, we are unable to find justification for specific charge, as for a disbursement on behalf of the estate, for Mr. Monroe's services, other than upon the hearing before the referee. The earlier procedure involved nothing of fact, did not draw into consideration either the conduct or the motives of the guardian *ad litem*, and the reason given by *Mr. Richardson* for the employment of Mr. Monroe, then associated with him in partnership, was one going wholly to his own convenience. It was substantially requesting Mr. Monroe to perform *Mr. Richardson's* own duties as guardian *ad litem* during the latter's absence. That being so, and no criticism being suggested that Mr. Monroe's rendition of the services was not as effective and useful as would have been *Mr. Richardson's* own, the character and amount of those services can be taken into consideration only as bearing upon the amount of proper allowance to the guardian, and the charge as for a distinctive disbursement must be disallowed.

The hearing before the referee, however, presents an unusual and difficult situation. At that hearing the entire conduct of *Mr. Richardson* was on trial; the facts as to the detail and volume of the services rendered by him, their quality, and the embarrassments and opposition under which they were performed, all were to be investigated, and in large measure must call for extended examination and cross-examination of himself as a witness. All this would have rendered his conduct of the hearing as his own advocate highly embarrassing, if not unseemly, and to this extent we approve the action of the referee and of the court below in treating Mr. Monroe's employment and payment as a proper disbursement; nor do we see any reason to disapprove the amount of $200, fixed therefor, which is upon the basis of $25 per day.

The remaining question is whether the amount fixed by the court as compensation for the guardian's own services is reasonable from the point of view already suggested as the true one. That allowance, largely exceeding the amount fixed by the referee, so closely corresponds with the opinions of several leading members of the bar testifying as experts that we cannot avoid the conviction that the court deemed himself substantially controlled thereby, as he would be by a consensus of witnesses on other subjects. Such, however, is not the true rule as to compensation of court officers, and especially of attorneys for services of a professional character. On that subject the opinions of others in the same profession are advisory only, and, although unanimous, are not controlling. Judges are as well able to form correct opinions as are other lawyers. *Taylor v. C., M. & St. P. R. Co.* 83 Wis. 645, 648; *Remington v. Eastern R. Co.* 109 Wis. 154; *Trustees v. Greenough*, 105 U. S. 527; *Harrison v. Perea*, 168 U. S. 311, 325. Again, the record before us makes apparent that the lawyers who estimated respondent's services at $5,000 gave considerable weight to the

Richardson vs. Tyson and others.

hypothesis that the value of the property conserved to the remaindermen approximated $150,000. This was not the fact. A mere remainder in property or in a fund is not of the same value as the fund itself. As the whole cannot be greater than the sum of its several parts, the value of the remainder can only be the balance remaining after deducting the prior estate, which, at the age of the life tenant, Mrs. Ruggles, approximates two thirds of the property, leaving value of the remainder only about $50,000. We by no means decide that this variance should make any very considerable difference in the fair value of the services rendered. *Smith v. Smith*, 69 Ill. 313. We mention it because the expert witnesses evidently gave much weight to the stated value of the estate, some of them justifying their opinions by the suggestion that three per cent. is a moderate collection fee. For both these reasons their estimates not only did not constrain the court to an allowance of $5,000, but they hardly supported it.

In view of the foregoing considerations, and of the further fact that most of *Mr. Richardson's* services not already compensated in full were performed before this court, and none of them, except the accounting, before the circuit judge who made the order appealed from, we have considered the whole subject as an original one, and reach the following conclusions: first, that the respondent is already paid in full for his services on the merits in circuit court, which, by the way, involved more than one third of all time spent by him; second, that the disbursements for expenses of travel, $17.50, should be allowed; third, that not more than $250 to Mr. Flanders and $200 to Mr. Monroe can be approved as specific expenses chargeable to the estate for services other than such as should have been performed by the guardian *ad litem;* and, fourth, that a fair and reasonable allowance to the guardian *ad litem* for all services as such, other than those in the circuit court, already compensated by payment of

$250, is the sum of $2,500, and interest on all such credits from July 19, 1897.

*By the Court.*— The order appealed from is reversed, and the cause remanded with directions to enter order allowing the guardian *ad litem* for all services and expenses the sum of $2,967.50, with interest from July 19, 1897, with provisions for lien and enforcement as in the reversed order.