T. B. ROBERTS *v.* A. B. VAUGHN.

*(Nashville.* December Term, 1919.)

1. **WILLS.** Counsel fees for infant contestant held payable pursuant to agreed judgment only out of proceeds of realty.

   Counsel for an infant contestant of a will pursuant to compromiso judgment can be paid for his services only out of the proceeds of the real estate, the personal estate being consumed by other charges agreed to and made part of the judgment. (*Post, p.* 264.)

2. **INFANTS.** Next friend of infant contestant entitled to be reimbursed for expenses.

   The next friend of an infant contestant of a will is entitled to be reimbursed for his exxpenses actually paid. (*Post, p.* 365.)

3. **INFANTS.** Minor is liable for necessaries.

   An infant is liable for all necessaries. (*Post, pp.* 365, 366.)

4. **INFANTS.** One willing to be bound for costs can become next friend.

   Any one who is willing to be bound for costs can become next friend of an infant to procure any right in court which the infant has, though the court in its discretion may dismiss the suit or appoint another next friend if it deems the one suing to be an improper person. (*Post, pp.* 365, 366.)

5. **INFANTS.** Next friend has power to appoint counsel to protect infant's rights.

   The next friend of infant suing for him has full power to act to secure the infant's rights, and may do all things necessary to such end, and appoint counsel for the infant, incapable of employing one for himself. (*Post, pp.* 365, 366.)

6. **INFANTS.** Next friend of infant will contestant entitled to compensation for services.

   The next friend of an infant contestant of a will, who secured to the infant a valuable estate by his services, is entitled to re-

Roberts v. Vaughn.

ceive compensation from the infant, though his account should be scrutinized closely. (*Post, pp.* 365, 366.)

Cases cited and approved:    McIsaac v. Adams, 190 Mass., 117; Owens et al. v. Gunther, 75 Ark., 37; Wheaton v. East, 13 Tenn., 61; White v. Flora, 2 Tenn., 426; Scott v. Buchanan, 30 Tenn., 471; Stephenson v. Stephenson, 4 Tenn., 123; Miles v. Kaigler, 18 Tenn., 10; Benton v. Pope, 24 Tenn., 393; Green v. Harrison, 35 Tenn., 132.

7. **INFANTS.** Next friend cannot bind infant by agreement with counsel for fees.

The next friend of an infant cannot contract with counsel for the amount of his fees so as to bind the infant, as such fees must be allowed by the court after an investigation of their value. (*Post, pp.* 366, 367.)

Cases cited and approved:    Cole v. Superior Court, 63 Cal., 86; Richardson v. Tyson, 110 Wis., 572.

8. **WILLS.** Circuit court had jurisdiction to refer infant's contest to clerk to fix counsel fees.

Under Shannon's Code, sections 6063, 6074, the circuit court, having had jurisdiction of contest of a will by an infant by next friend, also had jurisdiction to refer the case to its clerk, after a compromise judgment by agreement following several appeals, for the purpose of fixing fees of counsel employed by infant contestant's next friend. (*Post, pp.* 367-369.)

Code cited and construed:    Secs. 6063, 6074(S.).

9. **ATTORNEY AND CLIENT.** Wills. Circuit court properly declared lien for counsel fees on part of estate secured to infant.

Under Shannon's Code, sections 3592a1, 3592a2, on contest of a will by an infant, the circuit court properly declared a lien to secure fees of counsel, engaged by the infant's next friend on the part of the estate secured to the infant by a compromise judgment; the lien could be granted by a court of law as well as equity, because given by statute. (*Post, pp.* 369-371.)

10. **INFANTS.** Legal services in will contest.

*Where services rendered by counsel for an infant contesting a will*

Roberts v. Vaughn.

were necessaries, the infant is liable for their value in the same way that he is liable for other necessaries. (*Post, pp.* 369-371.)

Cases cited and approved: Epperson v. Nugent, 57 Miss., 45; Munson v. Washband, 31 Conn., 303; Barker v. Hibbard, 54 N. H., 539; Jones v. Yore, 142 Mo., 38.

Code cited and construed: Secs. 3592a1, 3592a2 (S.).

11. ATTORNEY AND CLIENT. Evidence held not to show payment in advance by widowed mother to attorneys for infant will contestant.

Evidence *held* insufficient to show that certain attorneys, engaged by a widow, whose only child had been disinherited by her deceased husband, to contest the will disposing of an estate supposed to be worth between $30,000 and $40,000, and which ultimately was shown to be worth over $50,000, had been paid in advance by the widow by two payments of $50 in cash and two notes for $50 each. (*Post, pp.* 371-374.)

12. ATTORNEY AND CLIENT. Fee of substituted attorneys for infant will contestant not covered by contract with original attorney.

Evidence *held* insufficient to show that the fees to be paid certain attorneys, for an infant will contestant, who took the place on death of the attorney engaged by the infant's next friend, were covered by the contract with such deceased attorney engaged by the next friend. (*Post, pp.* 374-377.)

13. ATTORNEY AND CLIENT. $8,000 fee allowed lawyers for infant will contestant held not excessive.

Eight thousand dollars in fees allowed by circuit court to three firms and two individual lawyers engaged in behalf of an infant in contesting his father's will, which had disinherited him of an estate worth over $50,000, the services resulting in recovery by compromise for the infant of some $17,000 to $19,000, *held* not excessive. (*Post, pp.* 377-380.)

FROM WILLIAMSON.

Appeal for the Circuit Court of Williamson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— Hon. J. C. Hobbs, Judge.

E. M. Hearn, McCorkle & White, W. C. Cherry and McCarley & Stephenson, for appellant.

M. H. Meeks and Frank P. Bond, for appellee.

Mr. Chief Justice Lansden delivered the opinion of the Court.

This case originated in the circuit court of Williamson county, and was appealed to the court of civil appeals. A petition for *certiorari* has been filed to correct the judgment of the latter court, and while many questions are discussed in the case, we think only three need be presented in this opinion.

Joab Sayers died testate in Williamson county, and willed all of his property to his brothers and sisters. He was the father of one child, Robert Sayers, but had been divorced from his wife a few years before his death. He was the owner of a large estate, both real and personal, which amounted to over $50,000. The next friend of the minor child, Robert Sayers, instituted a contest of the will. There were three trials in the circuit court of this case, and the trial resulted in a verdict by the juries against the will and in favor of the infant plaintiff, Robert Sayers. After the verdict in the last trial the circuit judge granted a peremptory instruction and dismissed the suit. An appeal was taken therefrom to the court of civil appeals, which court reversed and remanded the judgment of the circuit court, and directed that court to enter a

judgment upon the last verdict of the jury. The case was then brought to this court upon petition for *certiorari,* and the judgment of the court of civil appeals was modified to the extent of remanding the case for another trial. Upon the remand a compromise was reached between the next friend and the executor, acting for the devisees, and this compromise was fully presented to the circuit judge and approved by him. There is no complaint now at the terms or the manner of the compromise.

A judgment of the court was rendered upon the compromise, and this judgment embraced all of its terms, so that the case, as it comes to us, is an agreed judgment based upon the compromise agreement of the parties. This eliminates all questions which could be made upon the authority of the next friend to bind the infant by an agreement to the compromise. The compromise provided that the next friend should be reimbursed, his actual expenses paid out of pocket, and in addition it provided that he was to be paid for his personal services. It also provided for paying counsel for the infant out of the infant's part of the estate. It is reasonably clear that counsel can be paid out of the proceeds of the real estate only, the personal estate being consumed in other charges, which were agreed to and made the judgment of the circuit court.

The circuit court referred the case to the clerk of his court to report, among other things, what would be a reasonable fee for the next friend and the counsel for the infant employed by the next friend.

The question, made by proper assignment of error, as to whether the next friend is entitled to compensation for his personal services, is remarkably free of previous adjudication. There seems to be no doubt in the authorities but what the next friend is entitled to be reimbursed expenses actually paid. 14 R. C. L., 288, 289.

The facts of this case show beyond doubt that the infant secured a valuable estate by the services of the next friend. This was a necessity, and the infant is liable for all necessaries. *McIsaac* v. *Adams,* 190 Mass., 117, 79 N. E., 654, 112 Am. St. Rep., 321; 5 Ann. Cas., 729. *Owens et al.* v. *Gunther,* 75 Ark., 37, 86 S. W., 851 5 Ann. Cas., 130; *Wheaton* v. *East,* 5 Yerg., 61, 26 Am. Dec., 251; *White* v. *Flora,* 2 Tenn. (2 Overt.), 426, *Scott* v. *Buchanan,* 11 Humph., 471. But whether the next friend is entitled to compensation for personal services is not free from doubt. Any one who is willing to be bound for costs can become next friend of an infant to procure any right in the court which the infant has. *Stephenson* v. *Stephenson,* 3 Hayw., 123; *Miles* v. *Kaigler,* 10 Yerg., 10, 30 Am. Dec., 425; *Benton* v. *Pope,* 5 Humph., 393. This was provided by the statute of Westminster that in certain cases the infant might sue by next freind, but now by common practice any person may sue as next friend by giving bond for costs, although the court in its discretion may dismiss the suit, or appoint another next friend, if it deems the one suing to be an improper person. *Green* v. *Harrison,* 3 Sneed, 132. The next friend has full power to act for the purpose of securing

the infant's rights, and may do all things that are necessary to this end. He may appoint counsel for the infant, although the infant is incapable of employing one for himself. *Green* v. *Harrison,* 3 Sneed, 132. His power as next friend is strictly limited to the performance of the precise duty imposed upon him by law. He is expected to represent the infant, see that the witnesses are present at the trial of the infant's case, and to do all other things which are necessary to the infant's success. In such cases we see no reason why he should not have compensation for personal services performed within the powers granted him by law. The court, however, should closely peruse the case, and especially the services claimed, and be convinced by clear and satisfactory proof that the services have been rendered for which compensation is asked, and that these services fall within the general powers granted by the law to a next friend. The next friend's account for personal services against the infant should be scrutinized closely. He is always under the control of the court, and can be removed from his office by the court whenever it is deemed to be to the interest of the infant that such be done. In this case, Mr. Vaughn rendered unexceptionable services to the infant, and prosecuted the suit to secure the infant's right with great vigor and alertness. We think the amount allowed him is reasonable and well earned.

A question is made that a new trial should have been granted in order to allow the next friend to more fully prove that he made a contract with one of the counsel for the amount of his services, and upon a

contingent basis. The trial judge refused to grant a new trial for this reason, and the court of civil appeals affirmed the trial judge. We think there was no error in this action. The next friend cannot contract with counsel for the amount of his fees so as to bind the minor. *Cole* v. *Superior Court,* 63 Cal., 86, 49 Am. Rep., 78. It is immaterial if the next friend did make a contract for the amount of counsel fees. Such fees must be allowed by the court after an investigation of their value. See the note of 97 Am. St. Rep., 1002. The attorney in such cases has been likened to an attorney appointed by the court to defend a criminal, and his rights are subject to the subsequent action of the court in fixing his compensation. *Cole* v. *Superior Court,* supra; *Richardson* v. *Tyson,* 110 Wis., 572, 86 N. W., 250, 84 Am. St. Rep., 937.

It is said by appellant that the circuit court was without jurisdiction to refer the case to the clerk for the purpose of fixing the amount of counsel fees, among other things. The argument is, in substance, that the will contest in the circuit court presented the single question of will or no will, and the court could not refer the case to the clerk for the purpose of ascertaining the facts and adjudicating rights upon the matters of compromise, such as fees of counsel, and allowance for services of the next friend, and the like. It is said that these are matters of administration which belong to the county court, and not to the circuit court, and no agreement of the parties could confer jurisdiction upon the court to determine these issues. It is a court of law without jurisdiction of such matters of administra-

tion, and its decree based upon the agreement of the parties is void. The court of civil appeals was of opinion that jurisdiction of these matters was conferred upon the circuit court by sections 6063 and 6074 of Shannon's Annotated Code. Said sections being as follows:

"The circuit courts of this State are courts of general jurisdiction, and the judges thereof shall administer right and justice according to law, in all cases where the jurisdiction is not conferred upon another tribunal."

"Any suit of an equtable nature brought in the circuit court where objection has not been taken by demurrer to the jurisdiction, may be transferred to the chancery court of the county or district, or heard and determined by the circuit court upon the principles of a court of equity with power to order and take all proper accounts, and otherwise to perform the functions of a chancery court."

The circuit court is a court of general jurisdiction, and, among other things, it has jurisdiction to try an issue of *devisavit vel non.* Such was the nature of this case, and the will was transmitted by the county court to the circuit court for the trial of this issue. After three trials, and an appeal to the court of civil appeals, and a petition for *certiorari* to this court, the case was remanded for another trial. The circuit court plainly had jurisdiction to do this. The parties effected a compromise of the issue, which provided, among other things, that a verdict should be entered, setting up the will, and also that a certain division of the estate should be made between contestant and the contestees.

142 Tenn. 25

Because the contestant was an infant he could not bind himself by the compromise at all, unless it was to his advantage. Therefore, it was necessary to submit the compromise to the circuit judge and have his approval on behalf of the infant. This was done, and was clearly within the jurisdiction of the circuit court because the jurisdiction to try the will contest is given by statute and the jurisdiction to compromise it follows as of necessity. The items in contest here were provided for by the compromise, and it would have been useless to divide the compromise into its component parts. We are of the opinion, therefore, that the circuit court had jurisdiction to approve the compromise which the parties had made, and in doing so it had jurisdiction of the matters in controversy, because they are parts of the compromise. We think it is plain that this is not a case of conferring jurisdiction by agreement. It is merely entering a final judgment in the contested will case.

The circuit court declared a lien upon the part of the estate which was secured to the infant to secure fees of counsel. This lien is clearly granted by sections 3592a1 and 3592a2 of Shannon's Annotated Code. The lien can be granted by a court of law, as well as a court of equity, because it is given by the statute. In addition, the services rendered by counsel for the infant were necessities. He is liable for their value in the same way that he is liable for necessities. *Owens et al.* v. *Gunther*, supra; *McIsaac* v. *Adams*, supra; *Epperson* v. *Nugent*, 57 Miss., 45, 34 Am. Rep. 434; *Munson* v. *Washband*, 31 Conn., 303, 83 Am. Dec., 151; *Barker* v.

Roberts v. Vaughn.

*Yore,* 142 Mo., 38, 43 S. W., 348. A distinction exists between the services of counsel, as in this case, and services rendered for the protection of the infant in the enjoyment of his general or civil rights, which we need not discuss here, because the distinction is clearly drawn in most of the cases above cited. The infant being liable as for necessities, the counsel are entitled to a lien upon the estate secured for him, because the estate is in the hands of the court. It will not disburse the amounts secured to the infant by the services of his counsel without first paying their reasonable fees.

Upon the amount of the fees we make the following quotation from the opinion of the court of civil appeals delivered by Judge Clark, which we think is a full, fair and proper disposition of the case:

"Second. By the first and second assignments it is insisted that the trial judge erred in adjudging that the attorneys for the contestant were entitled to a fee of $8,000 for the services rendered by them to the minor contestant, and it is insisted that said amount is excessive and is more than reasonable compensation for the services rendered.

"The issue above suggested constitutes the main controversy made on this appeal. To sustain his contention the appellant relies on the facts as disclosed by the record, showing the services rendered and the results obtained by the attorneys to whom the fee complained of was allowed, and also upon the testimony of certain witnesses, which testimony tends to show that the fee is excessive.

"On the other hand, as tending to establish the proposition that the fee allowed is not excessive but, is only reasonable, appellees rely on the facts disclosed by the record, and which show the services rendered and the results obtained, and on certain testimony taken on the order of reference, which testimony, it is insisted, not only shows that the fee allowed is reasonable, but also that a larger fee would not have been excessive, Appellees also rely on the alleged fact that the fees which they were to receive were contingent. Appellant, in part, denies the insistences of appellees as last stated. and insists that Attorneys Hearn and White and McCorkle were paid their respective fees in advance, and that Mr. Harry Stokes contracted with the next friend, A. B. Vaughn, to represent the contestant for twenty per cent. of the amount recovered, and that Attorneys McCarley and Stephenson and Judge Cherry took the place of Mr. Stokes in the case, and are bound by his alleged contract.

"As to Mr. Hearn and McCorkle & White being paid in advance, this contention it not sustained by the record, and seems to be almost entirely without any foundation to rest upon. The facts with reference to this matter, briefly stated, are that shortly after the death of the testator, after his will was probated and it was discovered that all of his property was willed to his brothers and sisters, and his only child disinherited, the mother of the contestant called on Mr. Hearn with a view to employing him to represent her child in a contest of her former husband's will, to the end that the property left by the deceased might be procured for said

child. Mrs. Sayers is a poor woman, with little property.
Mr. Hearn had a talk with Mr. McCorkle with reference
to the matter, and it was agreed that if Mrs. Sayers
would pay to Mr. Hearn $50 and to the firm of McCorkle
& White $50, and give said parties each a note for
$50, they would institute the contest and would look to
the recovery for the balance of the fee to be received by
them. The $100 was paid, and two notes for $50 each
excuted by Mrs. Sayers as agreed, and the contest was
instituted. J. K. P. Ridley acted as next friend for
the minor. He conferred with said attorneys, and
brought to them the money and paid one or both of said
notes when they became due. At the time of the signing
of the notes, Mrs. Sayers signed an agreement which ap-
pears in the record, and which shows that the employ-
ment of Mr. Hearn and McCorkle & Whtie was upon the
terms and conditions as above stated. It is insisted for
the appellant that Mrs. Sayers did not know that she
signed said agreement, and did not intentionally sign
same. Attention is called to the fact that the agreement
was written on the same sheet of paper that Mr. Hearn's
note was written on, and just below the note, and that
Mrs. Sayers understood that she was signing the notes
only. This insistence is not sustained by the record.
In the first place, it is inconceivable that said attorneys
would undertake for a fee of $100 each the prosecution
of a will contest that apparently, and as afterward
developed in reality, was incumbered with many serious
difficulties, involving an estate, at the time of the institu-
tion of the contest, supposed to be worth between
$30,000 and $40,000 and which, as it afterwards de-

veloped, was worth over $50,000, and all of which estate, if the contest was successful, would go to their client. In the next place, both Mr. McCorkle and Mr. Hearn testify that the contract of employment was as shown by said paper writing signed by Mrs. Sayers, and that they did not agree to represent the contestant for the fee which has been paid them. It is not insisted that Mrs. Sayers did not sign the agreement, and it could not be successfully so insisted, for it is apparent that the signature to the agreement is the same as the signature to the notes. Mrs. Sayers knew that she was to execute only two notes, and it is not reasonable that she would have signed three papers, or would have signed her name three times, without knowing the contents or inquiring with reference to the contents of the third paper signed.

"As to the contract with Mr. Harry Stokes being for twenty per cent. of the amount of the recovery, there is evidence both for and against that proposition. It is admitted that Mr. Stokes entered into a written contract with the next friend, Mr. Vaughn. It is also admitted that the employment of Mr. Stokes was upon a contingent basis, the difference between the parties being that appellant insists that the fee of Mr. Stokes was to be twenty per cent. of the amount recovered, while appellees insists that it was to be fifty per cent. The written contract was lost after the death of Mr. Stokes, and, notwithstanding diligent search was made for same, it could not be found. Mr. Vaughn, the next friend, and his son, testify that the contract provided for a fee of twenty per cent. of the recovery, while Mr.

Stephenson, who saw and read the contract, and Mrs. Davis, former stenographer for Mr. Stokes, who wrote the contract, testify that it was for fifty per cent. There are circumstances in the record in addition to the testimony given supporting each of the theories, and the issue is a close one. However, we are unable to see how this issue becomes important in this controversy, as none of the appellees are undertaking to recover on the contract made with Mr. Stokes, and the fee, or the part of the fee, that his estate is to receive for the services rendered by him prior to his death, is embraced in the $8,000 allowed as the fee to all of the attorneys representing the contestant.

After the death of Mr. Stokes, which was after the second trial of the case, Messrs. McCarley & Stephenson and Judge Cherry came into the case. It is insisted for the appellant that they were to take the place of Mr. Stokes, and that the fee to be paid them for the services to be rendered was covered by the contract with Mr. Stokes. That these attorneys took the place of Mr. Stokes in the case is admitted, but that the fee to be paid them was covered by the contract with Mr. Stokes is denied, and in our judgment is not sustained by the record. Mr. Vaughn, the next friend, had a very high regard for Mr. Harry Stokes and his ability as a lawyer. He agreed to act as next friend on condition that he be permitted to employ additional counsel. He employed Mr. Harry Stokes as the additional counsel. When Mr. Stokes was killed, Mr. Vaughn was somewhat at sea as to what course he should pursue with reference to counsel to take his place. It is but

reasonable to assume that, had he understood that McCarley & Stephenson. who were in the office with Mr. Stokes, were employed in the case under the contract with Mr. Stokes, he would have gone to them and, at least advised with them with reference to procuring counsel to take the place of Mr. Stokes. He did not do so. He called to see Mr. Walter Stokes, of the Nashville bar, and proposed to employ him in the case to take the place of Mr. Harry Stokes. Mr. Walter Stokes told Mr. Vaughn that he was not situated so that he could accept the employment, and suggested to him that he get McCarley and Stevenson to look after the case. Thereupon Mr. Vaughn called on Mr. Stephenson, talked with him with reference to the case, and at that time did suggest that additional counsel be employed, and suggested Mr. Eslick. Mr. Stephenson made no objection to Mr. Eslick, but stated that Judge Cherry was associated with them in a number of cases, that he was an excellent lawyer, and suggested that he be employed. The recollections of Mr. Stephenson and Mr. Vaughn do not harmonize altogether as. to all that was said in this conversation. Mr. Vaughn insists that Mr. Stephenson said that he and Mr. McCarley were already in the case, and Mr. Stephenson denies this. However, it is not insisted that anything was said to Mr. Stephenson or Mr. McCarley or Judge Cherry, the latter of whom was afterward called into the conference and employed, with reference to the amount of their fees or that they would be expected to take the place of Mr. Stokes in the case and upon the terms that he had been employed. We do not think that the will

of Mr. Stokes has any bearing on this proposition. None of the three lawyers last named were partners with Mr. Stokes, and no reference is made in the will of Mr. Stokes to the case at bar, and the general provisions thereof do not cover this case in so far as providing for the payment of the fees of said lawyers out of the estate of Mr. Stokes is concerned.

"The proponents of the will were represented by able and diligent counsel. The case remained on the docket for about two years before it was tried the first time. There is proof in the record to the effect that the original next friend was not very conversant with matters pertaining to lawsuits, that it was difficult to procure him to take an interest in the case and to furnish his then counsel with the information necessary for them to have in order to warrant them in proceeding, but when Mr. Ridley died, and Mr. Vaughn was made next friend, the battle became imminent and soon began to be waged with great ability, energy, and effectiveness. As heretofore stated, the first trial resulted in a verdict for contestant. Upon motion for a new trial, this verdict was set aside and a new trial granted. Some time elapsed before the second trial. The principal asset of the deceased was a tract of land. This tract of land was increasing in value, and it seems that the legal battle was increasing in energy and earnestness. The second trial resulted in a verdict for the contestant. This verdict was set aside and a new trial granted. It was deemed advisable to preserve certain wayside bills of exception This was done. Shortly after the second trial, the death of Mr. Harry Stokes occurred,

and it was shortly after his death that Messrs. McCarley & Stephenson and Judge Cherry were employed. The third trial was had in July, 1916. The appellant undertakes to minimize, to some extent, the services rendered by the appellees in this trial, because a large portion of the testimony introduced was read from the transcript of the record made on the former trial. The record discloses that this course was deemed advisable by the attorneys representing the contestant for certain reasons suggested in the testimony, and the correctness of their judgment, or at least the fact that they made no mistake is evidenced by the fact that the third trial also resulted in a verdict in favor of the contestant. However, it also appears that, under the agreement, either party had the right to introduce oral testimony, and this was probably done.

"The proponent made a motion for a new trial, the motion was granted, and the trial judge also sustained proponent's motion which he had previously made for a directed verdict, and judgment was entered accordingly. The case came to this court, and went from this court to the supreme court, with the results heretofore stated. The case was argued before the supreme court while that court was in session at Jackson, and one or more of the attorneys for the contestant appeared before the supreme court and argued the case at that place.

"Is the amount of $8,000 excessive compensation for the services rendered?

"In the first place, quite an array of counsel were employed to represent the contestant, three firms, McCorkle & White and McCarley & Stephenson,

Cherry & Steger, and two individual lawyers, Mr. Hearn and Mr. Harry Stokes. It is true that only Mr. Hearn and McCorkle & White were in the case from its inception to the present time, but Mr. Stokes come into the case before the first trial, and the other attorneys were employed before the third trial in the lower court, and, with reference to the character of the services rendered, it is sufficient to say that the next friend, who from the begining of his connection with the case has taken great interest therein, expresses himself as entirely satisfied with results obtained; and, taking into consideration the actions of the trial judges, this court and the supreme court, it is reasonable to assume that the feeling of satisfaction indulged by the next friend is not without good foundation. It is not necessary for us to undertake to detail the work that was necessary to be done and which was done in prosecuting this suit to an end which to a large degree, is successful, at least, to an end that is accompanied with great benefit to the infant contestant. It appears that, after the decision in the supreme court, it appeared that lands in Williamson county and in the neighborhood of said county where the land of the testator is, had very much increased in value, and, as the next friend and his attorneys thought, had reached the maximum value. Proponent was confronted with the fact that three juries had set aside the will. Contestant was confronted with the fact that the trial judge had set aside the verdict of three juries. This court had held that the trial judge should have entered judgment on the verdict of the last jury. The supreme court had held that the

proponent was entitled to a new trial. All parties interested were confronted by the fact that the litigation was very expensive, and that a very large bill of costs had already been incurred, and that it had become difficult to keep in touch with the witnesses for the respective parties and to procure their further attendance. These facts, among others, led to the agreement of settlement and compromise which had heretofore been set out, and which was clearly best for all parties interested.

"Mr. E. J. Smith and Mr. Hamilton Parks, of the Nashville Bar, testify that, in their opinions, $5,000 would be reasonable compensation to the attorneys for contestant; and Judge John T. Allen is of the opinion that one-third of the amount actually recovered for the minor would be reasonable compensation to the attorneys for the contestant. These witnesses are good men and reputable lawyers and their opinions are entitled to and have been given considerable weight by this court.

"On the other hand, Judge Higgins, Mr. E. J. Hamilton, Mr. W. E. Norvell, Mr. Lewis Leftwich, state as their opinion that appellees are entitled to fifty per cent. of the amount recovered, Mr. E. T. Seay puts it at from thirty per cent. to fifty per cent., but later in his deposition says that he does not think fifty per cent. would be reasonable. Judge E. F. Langford, Messrs. F. A. Berry, Chester K. Hart, Harry A. Luck, John R. Aust, of the Nashville bar, and R. H. Crockett, of the Franklin bar, testify that, in their opinions, fifty per cent. of the net amount recovered for the minor contestant would be reasonable compensation to his attorneys.

Roberts v. Vaughn.

"The gross estate of the deceased amounted to slightly more than $50,000. While it is insisted by the guardian *ad litem* that it does not yet appear how much the contestant will receive under this compromise settlement and the decree of ·the court, still we think it appears reasonably certain that the contestant's share of the estate of his father, after the payment of debts, costs, and expenses to be paid out of the general fund, will be from $17,000 to $19,000.

It seems that the court left the matter of how many attorneys should be employed to represent the contestant to the next friends. They saw proper to employ the number hereinbefore mentioned. With the exception of the small amounts paid to Mr. Hearn and to McCorkle & White, these attorneys knew that the compensation, if any, to be received by them for the services rendered depended on their winning the case. It might happen, and, judging from the actions of the various courts, there was a strong probability, that they might receive no compensation for their services. This may have spurred them to greater efforts, but, however that may be, there is no complaint as to the efforts put forth. In view of all of these facts, we cannot say that the amount allowed by the trial judge is excessive. We understand that the amount allowed covers the entire fee of all of the attorneys representing the contestant, and that they have agreed, or will agree, upon a division among themselves, and this includes the amount that the estate of Mr. Harry Stokes is to receive. The first and second assignments of error are therefore overruled."

The case is affirmed.