STATE EX REL. J. Denis MORAN, Director of State Courts, Petitioner,

v.

DEPARTMENT OF ADMINISTRATION and Kenneth Lindner, Secretary of Administration, Respondents.

Supreme Court

*No. 81–761–OA. Argued May 29, 1981.—Decided July 6, 1981.*
(Also reported in 307 N.W.2d 658.)

For the petitioner the cause was argued by *David T. Flanagan,* assistant attorney general, with whom on type-written memorandum was *Bronson C. La Follette,* attorney general.

For the respondents there was typewritten memorandum submitted by *Trayton L. Lathrop, Donald L. Heaney, Michael J. Lawton* and *Isaksen, Lathrop, Esch, Hart & Clark,* of Madison, and oral argument by *Trayton L. Lathrop.*

PER CURIAM. The director of state courts has petitioned this court for a writ of mandamus to compel the secretary of administration to issue his warrant to the state treasurer so as to authorize expenditure of funds under a contract to provide an automated legal research system for the use of this court and the court of appeals. We conclude that the director was acting pursuant to authority granted by this court under its constitutional power of administration of the court system in demanding the warrant, and that the secretary had a clear legal duty to issue it. However, we decline to exercise our discretionary authority to command action by the secretary, in light of the current fiscal condition of the state and the ending of the biennium to which the requested expenditure would be charged.

On March 2, 1981, the director of state courts filed a request for purchase approval with the department of administration to cover the installation of an automated research system known as Lexis and marketed by Mead Data Central, Inc. The request included installation and instruction charges of $3,600, annual fixed charges of $19,200, and annual variable charges of $53,940, based on a use estimate of 600 hours per year by the personnel of this court and the court of appeals. The director determined that the sum of these three figures, $76,740, should be allocated to the appropriation for the supreme court under sec. 20.680(1)(a), Stats., in the amount of $27,493, and should be allocated to the appropriation for the court of appeals under sec. 20.660(1)(a), in the amount of $49,247. Under the procedures of the depart-

ment of administration this request required approval of the appropriate state officers for waiver of competitive bidding. This approval was executed on behalf of the bureau of procurement by David P. Blechinger. It was also executed by the secretary of administration and the governor. The space for approval of the division of state executive budget and planning was specifically marked "N/A," meaning not applicable.

Notwithstanding that the budget office was not required to approve the waiver, David Seligman, a budget analyst, requested that the bureau of procurement hold up approval of the request "until we have examined both the legislative intent and the alternatives for an information retrieval system in more detail." Subsequently, Seligman wrote a memo recommending denial of the request. He based this recommendation on what he stated was "the legislature's denial of this request during the 1979–81 biennial budget."

The legislative history of the 1979 budget act does not show any denial by the legislature of funds for an automated legal research system.

In its 1979 budget hearings, the joint committee on finance considered a budget proposal by the governor which would have specified a sum certain appropriation for the court of appeals and a sum sufficient appropriation for the supreme court. The governor's proposed bill included amounts of $35,000 in the fiscal year 1979–80 and $20,000 in the fiscal year 1980–81, for automated legal research under the sum certain appropriation recommended for the court of appeals. The first action of the committee was to consider and table a motion to add $55,400 to the amounts proposed by the governor for automated legal research for the court of appeals in the biennium. The second action of the committee was to delete the amount requested by the governor. The third action was to reject the governor's proposal for a sum

certain appropriation for the court of appeals. The committee recommended to the full legislature that both the supreme court and the court of appeals be funded by sum sufficient appropriations. The legislature adopted the committee's recommendation, and the governor signed it into law.

The director of state courts wrote a letter to the secretary of the department of administration on March 31, 1981, protesting the intervention by Seligman. The letter stated in part as follows:

"We have voluntarily followed the procedures laid down by the Department of Administration in securing sole source authorization for this contract. According to Mr. Blechinger, it was properly and persuasively done. We have also voluntarily followed the purchasing procedures promulgated by the Department of Administration and again, according to the appropriate Department personnel, everything is in order. We have the money in our budget to enter into this agreement.

"The process has now ground to a standstill because, in the opinion of the budget analyst, this is an inappropriate expenditure of funds. This is insanity.

"Mr. Seligman is both incorrect in his analysis of this situation and mistaken as to his role. To suggest that one analyst in the Department of Administration can unilaterally overturn a decision made by the Chief Justice of the Supreme Court and the Chief Judge of the Court of Appeals with respect to an instrumentality of the case deciding function of both courts would be ludicrous if it were not so appalling. It is beyond the prerogative of either the budget analyst or the Department to substitute its judgment in this matter."

On April 16, 1981, the instant action was commenced by the filing of a petition and an issuance of an order to show cause. On April 20, 1981, the secretary of administration wrote to Senator Gerald Kleczka and Representative John Norquist, the co-chairpersons of the joint committee on finance, stating in part as follows:

"On April 16, 1981, the Director of State Courts started an action against the Department of Administration

and me to compel payment for this system. I have resisted this purchase on the grounds that it was contrary to legislative intent. You are requested to give me your advice on this matter: Do you consider this purchase to be contrary to legislative intent, and do you think I should continue my objection to this purchase?

"It is my feeling that there is little chance for success in this case because the Court has already determined that it needs this system, and it will also be deciding the case. Consequently, unless you can say that the purchase is clearly contrary to legislative intent, I am very reluctant to continue my objection."

The joint committee on finance met on April 23, 1981. It considered and tabled a motion which would have had the effect of endorsing the position of the secretary of administration that purchase of the computerized research system was contrary to legislative intent.

In his response to the order to show cause, counsel for the secretary of administration has questioned the authority of the director of state courts to institute this action. Counsel asserts that the basis of the director's claim is the inherent and constitutional power of the supreme court to determine what is necessary for the court to function. He argues that this is a power which can be exercised only by the supreme court as a body, and that it cannot be delegated to the director. Counsel also argues that there is no statutory authority for the secretary to act as the director has demanded. He views the case as a constitutional confrontation between the court and the legislature with the secretary in the middle. We do not agree. The confrontation here is between the secretary and the director as to which one is authorized to control expenditures from the sum sufficient appropriations enacted by the legislature. We must determine whether the director has authority to order the expenditure of funds for automated legal research, and whether the secretary has a clear legal duty to comply with the order, for otherwise, under familiar legal principles, mandamus will not lie.

As long ago as 1874, it was well established that this court had the power to determine what was necessary for it to function efficiently, and to perform its duties, as well as the power to enforce its determinations should they be resisted by the executive or legislative branches of government.

When the superintendent of public property attempted to usurp the power to appoint a court employee, the court rejected his appointee with the following words:

"Fortunately for the members of the court and for the public service in which they are engaged, they are left in no such attitude of humiliation as compels them to petition the superintendent. . . . It is a power inherent in every court of record, and especially courts of last resort, to appoint such assistants; and the court itself is to judge of the necessity. This principle is well settled and familiar, and the power so essential to the expedition and proper conducting of judicial business, that it may be looked upon as very doubtful whether the court can be deprived of it. As a power judicial and not executive or legislative in its nature, and one lodged in a coordinate branch of the government separated and independent in its sphere of action from the other branches, it seems to be under the protection of the constitution, and therefore a power which cannot be taken from the court, and given to either the executive or legislative departments, or to any officer of either of those departments." *In re Janitor of Supreme Court,* 35 Wis. 410, 418–419 (1874).

When a county board attempted to transfer a circuit court to inadequate quarters, the court said:

"The authorities, in so far as any can be found on the subject, are to the effect that a constitutional court of general jurisdiction has inherent power to protect itself against any action that would unreasonably curtail its powers or materially impair its efficiency. A county board has no power to even attempt to impede the functions of such a court, and no such power could be conferred upon it. . . ." *In re Court Room,* 148 Wis. 109, 121, 134 N.W. 490 (1912).

A court has inherent power to appoint its own bailiff, despite legislation purporting to restrict appointment to a certain group of public employees selected by the sheriff. *Stevenson v. Milwaukee County*, 140 Wis. 14, 121 N.W. 654 (1909). A court can convene proceedings *ex parte* to determine whether air-conditioning of its courtroom is necessary for the efficient functioning of the court, and order installation of an air conditioner if it finds in the affirmative. *State ex rel. Reynolds v. County Court*, 11 Wis.2d 560, 105 N.W.2d 876 (1960).

An automated legal research system is an extension of the courts' library facilities. It is well within the subjects of the exercise of inherent power as set forth in our precedents. However, it is not necessary to rely on our inherent power for authority to order the secretary to issue his warrant for the installation of the system.

The 1977 amendment to the constitution created a court system as autonomous administratively as it had always been in adjudication. The reorganized structure was unified under the administrative control of the supreme court. Article VII, sec. 3(1). The chief justice was designated as the administrative head of the judicial system. Article VII, sec. 4(3). Powers were made explicit which had been implied in our decisions construing art. VII of the constitution as it existed prior to the amendment.

One of the powers and responsibilities of an autonomous administrative body is to consider and approve a budget governing the use of funds by those subject to its control. In *In re Court of Appeals of Wisconsin*, 82 Wis.2d 369, 371, 263 N.W.2d 149, 150 (1978), we said:

"[I]t has always been the responsibility of this Court to establish the budget for the state funded portion of the cost of the judicial system."

We conclude that the power to formulate and carry into effect the budget for the court system resides in this

court under the constitutional grant of administrative control over the unified court system. No determination of necessity in the inherent power sense is required in order for this court or the chief justice to exercise administrative control over the funds for the use of the court system.

Our rules provide that the director of state courts "shall exercise control over fiscal affairs, space allocation and equipment." SCR 70.01(3). For the 1979–81 biennium, the director prepared a budget for the court system and submitted it to this court for approval. The budget included $60,000 in each year of the biennium for the court of appeals for an automated research system, specifically designating Lexis as the system to be used. This court approved the budget submitted by the director, contemplating that its personnel would also have access to the system. We conclude that the director of state courts was acting under the authority of the court-approved budget when he determined that the Lexis system should be installed and directed that $49,247 be charged against the appropriation of the court of appeals and $27,493 be charged against the appropriation of this court to pay the associated costs.

Having concluded that the director had authority to make the demand, we turn to the question whether the secretary of administration was required to honor it. The state treasurer is authorized to recognize two instruments as authority for payment out of the treasury. One is a claim authorized to be so paid, and the other is a warrant of the department of administration. Section 14.58(3) and (4), Stats. The secretary of administration is the officer designated by the legislature to audit state accounts under art. IV, sec. 33 of the constitution. Without audit, there can be no payment of money out of the state treasury. *Wadhams Oil Co. v. Tracy*, 141 Wis. 150, 123 N.W. 785 (1909). Having refused to issue his

warrant in this case, the secretary has made it clear that he would also refuse to audit a claim based thereon.

An audit of the expenditure of public funds necessarily includes a determination as to whether there is authority for the expenditure. The legislature has made appropriations for the operation of the court of appeals in sec. 20.660, Stats., and for the operation of this court in sec. 20.680. Each appropriation is a sum sufficient to carry into effect the functions of the court to which it relates.

In order to determine whether the secretary of administration was entitled to refuse to issue his warrant, we must decide whether he is empowered to determine what sums are sufficient to carry into effect the functions of the supreme court and the court of appeals. We need look no further than the 1977 constitutional amendment and the budget power which we hold as an incident of our administrative control over the court system.

When a sum sufficient appropriation has been passed, the persons charged with administering the appropriation are those who are to determine whether an expenditure of funds falls within the terms of the appropriation. In *State ex rel. Board of Regents v. Zimmerman,* 183 Wis. 132, 197 N.W. 823 (1924), the question for decision was whether a statute passed in 1915 could be used as a source of funds for purchasing textbooks for the state normal schools when the 1923 legislature had refused to pass specific appropriations for the normal schools and the state university. The 1915 statute purported to appropriate annually as an emergency appropriation an amount necessary to meet the operating expenses of any state body for which sufficient money had not been appropriated to carry on its regular work. The certification of the governor, secretary of state, and state treasurer was required before expenditures could be made under the authority of the appropriation. The court held that the statute was a valid appropriation, not-

withstanding that' no definite sum of money was set forth. It also held that the statute did not delegate legislative power to make an appropriation to the three state officers whose certification was necessary. Finally, the court held that the three officers constituted a group to whom joint authority had been delegated, and that certification of two was sufficient to constitute the act of all three. The secretary of state, who had the audit power now delegated to the secretary of administration, had refused to audit a claim based on the appropriation enacted in the 1915 statute, and a writ of mandamus was issued compelling him to do so. Under the authority of this case and the state constitution, we hold that the secretary of administration had a clear legal duty to issue the warrant demanded by the director of state courts.

Having determined that the director had authority to demand the warrant, and that the secretary had a clear legal duty to honor the demand, we turn to the question whether to grant the director's application for mandamus. Mandamus is a discretionary writ. *Milwaukee County v. Schmidt,* 52 Wis.2d 58, 187 N.W.2d 777 (1971). This is an original action, raising a matter which we have determined to be *publici juris.* We think it appropriate to take judicial notice of the shortfall in state revenue caused by current economic conditions. The end of the 1979–81 biennium is fast approaching. If we ordered the secretary to issue a warrant for the amounts requested, they would be charged against the appropriations for the fiscal year 1980–81. Although the total involved, $76,470, is miniscule compared to the costs of operation of state government, even on a daily basis, we think it a proper exercise of judicial restraint to withhold granting the writ in the instant case. This court is committed to moderation in budgeting the expenses of the judicial branch of government, just as the governor

and the legislature are so committed for the executive and legislative branches.

Our decision not to issue a writ of mandamus in the instant case is re-enforced by the observation that the automated legal research system so provided would not be operative during the 1979–81 biennium, even though the amounts demanded would be charged as expenditures during the biennium. Expenditures for a given fiscal year ought to be charged, so far as possible, against services received or rendered during that year. We are compelled to observe, however, that the courts cannot indefinitely forego research tools now available in most of the larger law offices in this state, and at both law schools. The attorney general, who represents the director of state courts, has a computerized legal research capability. At oral argument, counsel representing the secretary of administration, conceded the power of this court to order the expenditure in question. In fact, counsel argued that the director had based his choice of the Lexis system on erroneous information, and supplied us with the specifications and cost quotations for a competing system. Of course, we will not make any attempt to evaluate the merits of this argument. The selection of an appropriate system lies within the duties which we have delegated to the director of state courts.

The application for mandamus is denied, without costs.