STATE EX REL. Lisa FRIEDRICH and Marlene Porter, Petitioners,

v.

CIRCUIT COURT FOR DANE COUNTY, Judith Coleman-Nispel, Clerk of Courts for Dane County and Richard Phelps, Dane County Executive, Respondents. [Case No. 94–2095–W.]

IN the MATTER OF the MOTION FOR CONTEMPT IN STATE of Wisconsin V. John E. SCHWIESOW:

STATE of Wisconsin EX REL. STATE of Wisconsin, Petitioner,

v.

CIRCIUT COURT FOR BAYFIELD COUNTY, The Honorable Norman L. Yackel, Presiding and H.G. Nordling, Respondents. [Case No. 94–2637–W.]

Supreme Court

*Nos. 94–2095–W, 94–2637–W. `Oral argument February 21, 1995.—Decided April 18, 1995.*

(Also reported in 531 N.W.2d 32.)

For the petitioners, Lisa Friedrich and Marlene Porter, there was a combined petition for Writ of Mandamus filed by *Richard J. Auerbach* and *Auerbach & Porter,* and *Nancy C. Wettersten* and *Julian, Musial, Wettersten & Friedrich, S.C.,* all of Madison, and oral argument by *Nancy C. Wettersten* and *Richard J. Auerbach.*

For the petitioner, State of Wisconsin, the cause was argued by *Alan Lee,* assistant attorney general,

with whom on the petition for supervisory writ was *James E. Doyle,* attorney general.

For the respondents, Richard Phelps & Dane County there was a response and oral argument by *Margaret L. O'Donnell,* assistant corporation counsel.

For the respondent, Judith Coleman-Nispel, there was a response by *Bruce M. Davey* and *Lawton & Cates,* Madison.

For the respondent, Bayfield County, there was oral argument by *Gary E. Sherman,* Portwing.

Amicus curiae brief was filed by *Gregg Herman* and *Loeb, Herman & Drew, S.C.,* Milwaukee for the Family Law Section of the State Bar of Wisconsin.

Amicus curiae brief was filed by *Robert Horowitz* and *Stafford, Rosenbaum, Rieser & Hansen,* Madison for the Wisconsin Counties Association.

PER CURIAM.   This court accepted jurisdiction over the issue raised in the Friedrich-Porter petition for a writ of mandamus relating to the compensation of court-appointed guardians ad litem in Dane county. We also accepted the petition in *Schwiesow* for supervisory jurisdiction of the motion for contempt pending before Norman L. Yackel, presiding circuit judge for Bayfield county, relating to compensation of a court-appointed special prosecutor. We have consolidated these two matters because they present the same question of law: In enacting statutes fixing the amount of compensation to be paid from public funds for court-appointed guardians ad litem and special prosecutors, did the legislature unconstitutionally infringe on the judiciary's power?[1]

---

[1] The Attorney General and the Department of Administration filed briefs defending the constitutionality of the statutes.

7

The issue arises because both this court and the legislature have prescribed the means for a circuit court to calculate compensation for court-appointed attorneys. The Supreme Court Rules (1994) set forth a rate of at least $70 per hour, with exceptions, for payment of an attorney appointed by a court as follows:

**SCR 81.01 Compensation of attorneys appointed by the court.** Notwithstanding any provison of the statutes, in all cases where the statutes fix a fee and provide for the payment of expenses of an attorney to be appointed by the court to perform certain designated duties, the court appointing the attorney, after the services of the attorney have been performed and the disbursements incurred, shall fix the amount of his or her compensation for the services and provide for the repayment of disbursements in such sum as the supreme court has specified in SCR 81.02.

**SCR 81.02 Compensation.** (1) Except as provided under sub. (1m), attorneys appointed by any court to provide legal services for that court, for judges sued in their official capacity, for indigents and for boards, commissions and committees appointed by the supreme court shall be compensated at the rate of $70 per hour or a higher rate set by the appointing authority. The supreme court shall review the specified rate of compensation every two years.

(1m) Any provider of legal services may contract for the provision of legal services at less than the rate of compensation under sub. (1).

(2) The rate specified in sub. (1) applies only to services performed after July 1, 1994.[2]

---

[2] The supreme court adopted SCR 81.01 and 81.02 on December 11, 1979, and SCR 81.01 has remained unchanged.

The legislature has enacted statutes to govern compensation for court-appointed guardians ad litem and special prosecutors. Effective January 1, 1994, the legislature declared in several statutes that when a court orders a county to pay the compensation of a guardian ad litem, "the amount ordered may not exceed the compensation paid to private attorneys under s. 977.08(4m)."[3] Similarly, sec. 978.045(2)(a), Stats. 1993–94, declares that "the court shall fix the amount of compensation for any attorney appointed as special prosecutor under [sec. 978.045(1r)] according to the rates specified in s. 977.08 (4m)."

Section 977.08(4m), Stats. 1993–94, sets the rate of compensation for private attorneys assigned by the State Public Defender to represent indigents on or after December 1, 1992, as $50 per hour for time in court, $40 per hour for time out of court, and $25 per hour for travel time related to a case. This statutory

SCR 81.02 as adopted in 1979 specified a rate of $50 per hour for in-court time, $35 per hour for office time, and $25 per hour for travel time. After a public hearing, the court replaced this fee structure effective January 1, 1989, with a single hourly rate of $60, and added the phrase "or at a higher rate set by the appointing authority." Again following a public hearing, the court increased the hourly rate to $70 effective July 1, 1994. Additionally, it added section (1m) allowing providers of legal services to contract at less than the hourly rate prescribed in SCR 81.02.

[3] For example, sec. 48.235(8), Stats. 1993–94, provides:

"If the court orders a county to pay the compensation of the guardian ad litem, the amount ordered may not exceed the compensation paid to private attorneys under s. 977.08(4m)."

*See also, e.g.,* secs. 48.996, 757.48, 767.045(6) and 880.331 (8) and 891.39(1)(b), Stats. 1993–94.

rate of compensation is less than the court-established rate of compensation for court-appointed counsel.

In both matters before the court, the dispute centers around court-appointed attorneys whose level of compensation was ordered by the circuit court in accordance with SCR 81.02 but whose compensation was reduced by the payor to the rate set by the statutes. In addition to specific relief of payment in accordance with the court-established rate, the petitioners in both cases ask this court to declare the legislature's statutes setting fees for court-appointed counsel to be paid from public funds unconstitutional as a violation of separation of powers.

We conclude, along with the parties and the Wisconsin Counties Association and the Family Law Section of the State Bar of Wisconsin as amici, that courts have the power to set compensation for court-appointed attorneys and are the ultimate authority for establishing compensation for those attorneys. The courts derive this power and ultimate authority from their duty and inherent power to preserve the integrity of the judicial system, to ensure and if necessary to provide at public expense adequate legal representation, and to oversee the orderly and efficient administration of justice. We therefore uphold the validity of SCR 81.01 and 81.02.

For the reasons set forth below, we conclude that the statutes in issue are facially constitutional; it is ordinarily within the legislature's province to appropriate funds for public purposes. We further conclude that these statutes fall within the area of power shared by the judiciary and the legislature. Finally, we conclude that the petitioners have not proven beyond a reasonable doubt that the statutes unduly burden or substantially interfere with the work of the courts.

To harmonize the judicial and legislative powers to set compensation for court-appointed counsel, we conclude that a court should abide by the statutes when it can retain qualified and effective counsel at the statutory rate for a case before it. A circuit court should, however, depart from the statutory fee schedule and order compensation at the rate established in SCR 81.01 and 81.02 or at a higher rate when necessary to secure qualified and effective counsel for a case before it.[4] When a circuit court concludes in a case that it must order compensation in excess of the statutory fee schedule to secure qualified and effective representation and to ensure the effective administration of justice, it must set forth its reasons on the record. While we do not view a full-fledged hearing as necessary in every such case, the record must show that the circuit court is unable to obtain qualified court-appointed counsel at the statutory rate. This record facilitates review.

Finally, in the interest of the fair administration of the judicial system, we conclude that guardians ad litem and special prosecutors to be paid from public funds and appointed by a court prior to the announcement of this rule shall be compensated according to SCR 81.01 and 81.02. We therefore order Dane county and the Department of Administration to compensate the guardians ad litem and special prosecutor appointed by the circuit courts prior to the effective

[4] These holdings conform to earlier cases in which the court stated that a circuit court may exceed the SCR 81.02 mandatory rate of compensation when necessary to obtain counsel, *Door County v. Hayes-Brook,* 153 Wis. 2d 1, 13, 449 N.W.2d 601 (1990), and may also, in its discretion, reduce total compensation, *In Matter of Estate of Trotalli,* 123 Wis. 2d 340, 358–59, 366 N.W.2d 879 (1985).

date of this decision at the rates specified in SCR 81.01 and 81.02, or at the rates specified by the circuit court in each case, for the duration of those appointments.

## I.

The facts of the cases are undisputed. In the mandamus matter, attorneys Lisa Friedrich and Marlene Porter, co-petitioners, were appointed guardians ad litem by Dane county circuit courts on or after January 1, 1994. Their fees are payable by Dane county. On July 20, 1994, the county stated its position that as "a creature of the legislature" it had no choice but to compensate court-appointed guardians ad litem at the statutory rate, "[u]ntil such time as a definitive ruling is made by the Wisconsin Supreme Court on this issue. . . ."[5] On August 12, 1994, the petitioners filed this mandamus proceeding to compel Dane county to compensate them at the rate specified in SCR 81.02. The petitioners claim they have no adequate remedy at law, as it would be impractical for them to challenge the county's position with every appointment.

In the second case, which involves contempt and a supervisory writ, the circuit court for Bayfield county, Thomas J. Gallagher circuit judge, appointed a special prosecutor and set his pay at the rate of $60 per hour, the rate then specified by SCR 81.02. The Department of Administration declined to pay him at the $60 rate, offering instead to compensate him at the statutory rates. On the motion of Judge Gallagher, the circuit court for Bayfield county, Norman L. Yackel presiding judge, ordered the Department of Administration to pay the appointed special prosecutor at the rates speci-

[5] Letter of Margaret O'Donnell, Assistant Corporation Counsel, to Richard J. Phelps, County Executive, July 20, 1994.

fied in SCR 81.02. The circuit court noted that the power to appoint counsel is an inherent power of the court and that the power to appoint must also carry with it the power to compensate pursuant to SCR 81.01 and 81.02.

## II.

The petitioners challenge the constitutionality of the fee-setting statutes in issue in this case under the separation of powers doctrine embodied in the Wisconsin constitution. It is well-established in our case law that a statute is presumed constitutional. A court will strike down a statute only when the challenger proves the statute unconstitutional beyond a reasonable doubt. *State v. Holmes,* 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982).

The doctrine of separation of powers, while not explicitly set forth in the Wisconsin constitution, is implicit in the division of governmental powers among the judicial, legislative and executive branches.[6] *State v. Holmes,* 106 Wis. 2d 31, 42, 315 N.W.2d 703 (1982). "The Wisconsin constitution creates three separate coordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another." *Id.*

Each branch has a core zone of exclusive authority into which the other branches may not intrude. *State ex rel. Fiedler v. Wisconsin Senate,* 155 Wis. 2d 94, 100,

---

[6] Article VII, secs. 2, 3, 4, Wis. Const. (judicial); Art. IV, sec. 1, Wis. Const. (legislative); Art. V, sec. 1, Wis. Const. (executive).

13

454 N.W.2d 770 (1990), citing *In Matter of Complaint Against Grady*, 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984). "Great borderlands of power" lie in the interstices among the branches' core zones of exclusive authority. *In re Appointment of Revisor*, 141 Wis. 592, 597, 124 N.W. 670 (1910). In these borderlands it is neither possible nor practical to categorize governmental action as exclusively legislative, executive or judicial. *Layton School of Art & Design v. WERC*, 82 Wis. 2d 324, 347, 262 N.W.2d 218 (1978).

The separation of powers doctrine was never intended to be strict and absolute. Rather, the doctrine envisions a system of separate branches sharing many powers while jealously guarding certain others, a system of "separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952); *State v. Holmes*, 106 Wis. 2d at 42–43. When the powers of the legislative and judicial branches overlap, the court has declared that the legislature is prohibited from unreasonably burdening or substantially interfering with the judicial branch. *State v. Unnamed Defendant*, 150 Wis. 2d 352, 360, 441 N.W.2d 696 (1989). This subtle balancing of shared powers, coupled with the sparing demarcation of exclusive powers, has enabled a deliberately unwieldy system of government to endure successfully for nearly 150 years.

■ In determining whether a statute unconstitutionally infringes upon judicial power, this court must first consider whether the subject matter of the statute in question falls within the power constitutionally granted to the legislature. If it does, we must then inquire whether the subject matter of the statute also

falls within the judiciary's constitutional grant of power.

If a statute falls within the judiciary's core zone of exclusive authority, the court may abide by the statute if it furthers the administration of justice, "as a matter of comity or courtesy rather than as an acknowledgement of power." *State v. Cannon,* 196 Wis. 534, 539, 221 N.W. 603 (1928). Thus the court acknowledges the legislature's power to declare itself on questions relating to the general welfare and the court complies with the legislature's declared policy as long as the policy aids but does not obstruct "the court in its own exclusive sphere." *State ex rel. Reynolds v. Dinger,* 14 Wis. 2d 193, 203, 109 N.W.2d 685 (1961). *See also State v. Holmes,* 106 Wis. 2d 31, 46, 68–69, 315 N.W.2d 703 (1981) (quoting *Integration of the Bar Case,* 244 Wis. 8, 49, 52, 11 N.W.2d 604, 12 N.W.2d 689 (1943)).

A statute within the area of power shared by the two branches, yet outside of the judiciary's exclusive authority, will be constitutional only if it does not unduly burden or substantially interfere with the judicial branch. *State v. Holmes,* 106 Wis. 2d 31, 38, 68–69, 315 N.W.2d 703 (1981).

In these cases, the foregoing analysis of separation of powers requires us to evaluate both the power of the legislature to enact these statutes and the power of the court to create SCR 81.01 and 81.02. The focus of this evaluation is on whether one branch's exercise of power has impermissibly intruded on the constitutional power of the other branch.

## III.

Our first task is to determine to what extent both the legislature and the judiciary have the power to establish fees for court-appointed counsel paid from public funds. The legislature has power to enact legislation for the general welfare and to allocate government resources. The statutes addressing the compensation of court-appointed counsel from public funds fall squarely within these powers. The respondents explain the impact on public funds of compensating court-appointed counsel at the SCR rate rather than the statutory rate. According to the respondents, if court-appointed guardians ad litem are compensated at the SCR rate instead of the rate set by the legislature, the counties' expense for attorney fees may increase by approximately $2 million a year.

Courts also wield power over the setting of fees for court-appointed counsel paid from public funds. Courts' authority in this regard does not stem from an explicit constitutional grant of power but rather from courts' inherent power. In addition to the powers expressly granted to courts under the constitution, courts have inherent, implied and incidental powers. These terms "are used to describe those powers which must necessarily be used" to enable the judiciary to accomplish its constitutionally or legislatively mandated functions. *State v. Holmes,* 106 Wis. 2d at 44, quoting *State v. Cannon,* 199 Wis. 401, 402, 226 N.W. 385 (1929).[7]

---

[7] "[C]ertain powers have been ceded to courts because they are courts. Such powers have been conceded because without them they could neither maintain their dignity, transact their

■ The judiciary's power to appoint guardians ad litem and special prosecutors is an inherent power.

business, nor accomplish the purposes of their existence." *State v. Cannon,* 196 Wis. 534, 536, 221 N.W. 603 (1928).

For discussions of express, inherent, implied and incidental powers in Wisconsin cases, see *State of Wisconsin ex rel. Collins v. American Family Mut. Ins. Co.,* 153 Wis. 2d 477, 488, 451 N.W.2d 429 (1990) (power to impose penalty); *State v. Darling,* 143 Wis. 2d 839, 844, 422 N.W.2d 886 (Ct. App. 1988) (circuit court's power to regulate motor vehicle operating privileges); *Breier v. E.C.,* 130 Wis. 2d 376, 387 N.W.2d 72 (1986) (power to expunge juvenile court records); *State ex rel. Moran v. Department of Admin.,* 103 Wis. 2d 311, 307 N.W.2d 658 (1981) (power to formulate and effectuate budget for courts); *State v. Lloyd,* 104 Wis. 2d 49, 310 N.W.2d 617 (Ct. App. 1981) (circuit court's power to appoint special prosecutor); *State v. Braunsdorf,* 98 Wis. 2d 569, 297 N.W.2d 808 (1980) (power to dismiss a criminal prosecution with prejudice); *In re Court of Appeals,* 82 Wis. 2d 369, 263 N.W.2d 149 (1978) (power to determine number of employees of the court of appeals and to budget for state funded portion of cost of judicial system); *State v. Cannon,* 199 Wis. 401, 226 N.W. 385 (1929) (power to suspend or disbar attorney); *State v. Cannon,* 196 Wis. 534, 221 N.W. 603 (1928) (power to suspend or disbar attorney); *In re Court Room,* 148 Wis. 109, 134 N.W. 490 (1912) (county's obligation to provide courtrooms and offices); *Stevenson v. Milwaukee County,* 140 Wis. 14, 121 N.W. 654 (1909) (power to appoint court attendants); *In re Janitor of Supreme Court,* 35 Wis. 410 (1874) (power to appoint and remove janitor); *Supervisors of Crawford County v. Le Clerc,* 3 Pin. 325, 4 Chand. 56 (1851) (power to appoint and order compensation for interpreters).

For commentators' discussions of courts' powers, see Wis. Legislative Reference Bureau, *The Powers of the Wisconsin Supreme Court* (Res. Bull. 76–RB–2 (Jan. 1976)); Felix F. Stumpf, *Inherent Powers of the Courts* (1994); Howard B. Glaser, *Wachtler v. Cuomo: The Limits of Inherent Powers,* 78

Guardians ad litem aid courts in performing their duty to protect minors who appear before them.[8] As the Attorney General's brief recognizes, guardians ad litem are needed to assure the validity of court procedures and the integrity of court proceedings. Attorney General's brief in Friedrich-Porter at 9. Likewise, despite the existence of statutes authorizing circuit courts to appoint special prosecutors, the courts' power to appoint special prosecutors is gleaned from the courts' inherent power. *State v. Lloyd,* 104 Wis. 2d 49, 56, 310 N.W.2d 617 (Ct. App. 1981). *See also* Brief of the Department of Administration at 2.

The power to appoint includes the power to compensate.[9] It has long been established, and the parties

---

Judicature 12 (1994); Geoffrey C. Hazard *et al., Court Finance and Unitary Budgeting,* 81 Yale L.J. 1286 (1972); Robert W. Muren, *Note: Constitutional Law: The Inherent Power of the Courts to Appropriate Money for "Reasonably Necessary" Expenditures,* 55 Marq. L. Rev. 392 (1972); Ted Z. Robertson, *The Judiciary's Inherent Power to Compel Funding: A Tale of Heating Stoves and Air Conditioners,* 20 St. Mary's L.J. 863 (1989).

[8] This court has described its solicitude for minors and the appointment of guardians ad litem for minors as follows:

> As most fundamental among these [underlying principles] must be borne in mind that the infant is always the ward of every court wherein his rights or property are brought in jeopardy, and is entitled to the most jealous care that no injustice be done him. The guardian ad litem is appointed merely to aid and enable the court to perform that duty of protection.

*Richardson v. Tyson,* 110 Wis. 572, 578, 86 N.W. 250 (1901). *See also Romasko v. City of Milwaukee,* 108 Wis. 2d 32, 37–38, 42, 321 N.W.2d 123 (1982).

[9] "In Wisconsin, the authority to appoint counsel and set fees has traditionally been considered a judicial function." *Door*

and amici in these two matters all agree, that the power to set and order compensation at public expense for court-appointed counsel is an inherent power of the judiciary. Further, as all involved acknowledge, the judiciary has ultimate authority to set compensation. Thus, the amicus brief of Wisconsin Counties Association states: "This court undoubtedly has the *ultimate* authority to set the compensation of guardians ad litem." Amicus brief at 5, emphasis in original. The judiciary, as the branch of government most intimately familiar with the complexity of cases and the qualifications of counsel, is in the best position to decide the compensation for court-appointed counsel. A court's inherent power to compensate court-appointed attorneys is necessary to preserve the judiciary's constitutional duty to oversee the administration of justice. The parties and amici agree that appropriate compensation helps ensure that the tasks for which counsel is appointed are competently carried out. As the Attorney General's brief states, "this court and the lower courts should pay particular attention to the levels of compensation provided for attorneys who represent indigent defendants, juveniles and incompetents because of the courts' overriding interest in the administration of justice." Attorney General's brief in Friedrich-Porter at 7. If the statutes are interpreted as establishing an absolute maximum compensation in all situations, they impermissibly interfere with the judiciary's powers. *See* Brief of the Department of

*County v. Hayes-Brook,* 153 Wis. 2d 1, 16, 449 N.W.2d 601 (Heffernan, C.J., concurring). *See also State v. Lehman,* 137 Wis. 2d 65, 76–77, 403 N.W.2d 438 (1987); *State v. Lloyd,* 104 Wis. 2d 49, 56, 310 N.W.2d 617 (1981); *County of Dane v. Smith,* 13 Wis. 654 (*585) (1861); *Carpenter v. County of Dane,* 9 Wis. 249 (*274) (1859).

Administration at 3. Thus, because the courts' power to order appropriate compensation for court-appointed counsel is necessary for the effective operation of the judicial system, we conclude that SCR 81.01 and 81.02 are constitutional exercises of judicial power.

## IV.

That both the legislative and judicial branches exercise power in the realm of compensating court-appointed counsel from public funds does not necessarily lead to the conclusion that the two branches share this power. A legislative enactment, for example, might fall within the legislature's power to allocate public resources but might also intrude impermissibly on the judiciary's core zone of exclusive power.

In determining whether the judiciary's power to set compensation for court-appointed counsel paid from public funds is shared or exclusive, it is helpful to consider the practices and laws in existence before, at the time of, and after the adoption of the state constitution. *State v. Beno,* 116 Wis. 2d 122, 137–37, 341 N.W.2d 668 (1984); *In re Constitutionality of Statute Empowering Supreme Court to Promulgate Rules Regulating Pleading, Practice, and Procedure in Judicial Proceedings,* 204 Wis. 501, 505, 236 N.W. 717 (1931). We note, however, that even if the legislature has long exerted power over a subject matter without prompting judicial protest, the silence of the courts indicates neither judicial acquiescence in the exercise of that power nor a concession that the legislature's power over the subject matter is paramount. When a statute is surplusage but does no harm, the court will not necessarily strike it down. George Currie & Warren Resh, *The Separation of Powers Control of Courts and Law-*

20

*yers,* 47 Wis. Bar Bull. 7, 8–9 (Dec. 1974). The historical involvement of both the legislature and the judiciary in compensation of court-appointed guardians ad litem and special prosecutors confirms that the power to set compensation for court-appointed counsel is not reserved exclusively to the judiciary, but rather is shared, with the ultimate authority in the courts for establishing compensation for court-appointed counsel.

### A.

Legislative enactments governing the appointment of guardians ad litem predate statehood. *See* Acts of the Legislative Assembly of the Territory of Wisconsin, No. 58, Article 4, 1838.

Historically, the fees of a guardian ad litem were paid out of the estate in probate cases or awarded as taxable costs. Mary Alice Hohmann & James W. Dwyer, *Guardians ad litem in Wisconsin,* 48 Marq. L. Rev. 445, 465–68 (1965). Statutes then established the counties' liability for compensation of court-appointed guardians ad litem in certain proceedings. Several of these statutes declared that trial courts may order the compensation of appointed guardians ad litem at reasonable rates. *See, e.g.,* secs. 48.02(8) and 48.996, Stats. 1955.[10] However, some statutes, such as sec. 328.39, Stats. 1945, provided that under certain circumstances the court-appointed guardian ad litem's fees and expenses "shall be paid as provided in section 357.26." Section 357.26, Stats. 1945, directed counties to compensate court-appointed counsel representing indigent

---

[10]*See also* sec. 75.521(12), Stats. 1947 (in actions to foreclose tax liens against a minor defendant, court shall appoint guardian ad litem and county shall pay the fees for services fixed by the court).

criminal defendants at a rate the appointing court certifies to be reasonable, "but not to exceed $25 per day [for certain functions], and not to exceed $15 per day [for other tasks]" and $10 per day for taking depositions. This court interpreted secs. 328.39 and 357.26, Stats. 1945, in *Shewalter v. Shewalter,* 259 Wis. 636, 641, 49 N.W.2d 727 (1951). The court concluded that the legislature in enacting this statute intended the counties to pay guardian ad litem fees, but that the legislature did not intend the courts to use the statutory fee schedule in ordering compensation for court-appointed guardians ad litem. *See also* 39 Op. A. G. 545 (1950).

Section 256.49, Stats. 1957, later renumbered sec. 757.49, Stats. 1979–80, declared that the courts shall fix the fees for court-appointed attorneys at customary rates for comparable services, "notwithstanding any other provision of the statutes."

## B.

The legislature has enacted provisions regarding the appointment and compensation of special prosecutors for more than a century. In 1849, the legislature declared that the circuit courts shall appoint "some suitable person" whenever the district attorney in that county is non-existent, absent or unable to perform the duties of the office. R.S. 1849 c. 10, sec. 68. In 1887, the legislature provided that court-appointed counsel who assist district attorneys with criminal prosecutions shall "be paid in the same manner as is now provided by law for the payment of counsel for indigent criminals." Section 752a, Sanford & Berryman, Stats. Annot. 1889. At that time, the statute addressing fees for court-appointed counsel to represent indigent criminal defendants provided that the county would be

liable only for compensation the court certifies to be a "reasonable compensation . . . in no case to exceed fifteen dollars per day." Section 4713, Sanford & Berryman, Stats. Annot. 1889.

In the late nineteenth century the trial courts were apparently divided regarding whether sec. 4713 set a maximum of $15 a day on the compensation that the courts could certify for counsel appointed under sec. 752a. Some circuit courts had ordered compensation in excess of the statutory rates. *See* annotation at sec. 750, Sanford & Berryman, Stats. Annot. 1898.

Thereafter, the legislature amended the statutes to provide a maximum rate of compensation for court-appointed counsel who act as district attorneys. *See, e.g.,* sec. 1; sec. 59.44, ch 283, Laws of 1903, Stats. 1919.

In the 1965 statutes, the legislature eliminated reference to maximum fees and instead declared that courts shall fix the amount of compensation for court-appointed counsel who perform the duties of a district attorney under sec. 59.44, Stats. 1965, at an amount "as is charged by attorneys of this state for comparable services." Section 59.44(4), Stats. 1965. *See also* sec. 978.045, Stats. 1989–90.

Thereafter the legislature enacted two provisions relating to compensation for court-appointed special prosecutors. In sec. 978.045(2)(a), Stats. 1991–92, the legislature declared that the courts shall fix the amount of compensation for court-appointed special prosecutors in accordance with the rates set in the public defender statute, sec. 977.08(4m), Stats. 1991–1992. In sec. 757.27, Stats. 1991–92, the legislature simply declared that the appointing court shall fix the amount of compensation for appointed special prosecutors without legislative guidance as to the amount. The leg-

23

islature repealed sec. 757.27 in 1993. 1993 Wis. Act 16, sec. 3569b.

This brief history confirms that both the courts and the legislature have exercised power over compensation of guardians ad litem and special prosecutors and have treated this subject as one of shared power. We further observe that the legislature has historically deferred to the courts' determination of the compensation to be paid to court-appointed counsel.

## V.

Finally, we consider whether the statutes in issue are, as the petitioners assert, unconstitutional as an undue burden on and a substantial interference with the judiciary. The undue burden or substantial interference must be proven beyond a reasonable doubt. *State v. Holmes,* 106 Wis. 2d at 38. This high burden of proof reflects the necessity for the court to indulge every presumption in order to preserve the constitutionality of a legislative enactment. Imposing the highest standard of proof is particularly necessary in cases such as these to ensure that the judiciary will order the expenditure of public funds for its own needs only when it articulates a compelling need. As the Washington Supreme Court has observed,

> [t]he unreasoned assertion of power to determine and demand their own budget is a threat to the image of and public support for the courts. In addition, such actions may threaten, rather than strengthen, judicial independence since the involvement in the budgetary process imposes on the courts at least partial responsibility for increased taxes and diminished funding of other public ser-

24

vices. . . . If separation of powers has as a basic element the preservation of the rule of law, court decisions must not be biased in favor of court funding.

*In the Matter of the Salary of the Juvenile Director,* 552 P.2d 163, 172–73, 87 Wash.2d 232 (1976).

In support of their position that the fee-setting statutes unduly burden or substantially interfere with the judiciary, petitioners Friedrich and Porter have submitted three sets of affidavits, one from the judiciary and two from attorneys.[11]

The first set of affidavits was submitted by the current and former Chief Judges of the fifth district, Dane county circuit judges Daniel R. Moeser and Robert Pekowsky. Each of these judges has more than fifteen years of service on the bench, many of them spent adjudicating family and juvenile cases. Because these judges are well-situated and qualified to evaluate the potential effects of the fee-setting statutes on the administration of justice in our circuit courts, their affidavits have created a strong impression on this court. Judge Pekowsky states, and Chief Judge Moeser agrees:

I believe that it is critical to the interest of children whose cases are before me in my capacity as a [judge] that their best interest be protected by guardians ad litem who have the ability, experience and training to provide effective and competent representation. This is especially true because children whose interests are inadequately served by ineffective or incompetent guardians ad litem do not have

[11] No affidavits were submitted in the Schwiesow matter, but for purposes of this decision we conclude that the Friedrich-Porter affidavits apply to both cases.

a practical remedy. Even if a child can raise a claim of ineffective assistance of counsel and/or appeal from the ultimate disposition, so much time will pass between the trial court order and review by an appellate court that irreparable injury is likely to occur.

. . .

In the long run, I believe that the involvement of an experienced and able guardian is less expensive than when an inexperienced or less competent attorney serves in this capacity, because the experienced and able guardian ad litem is usually able to obtain a resolution of the case in the best interest of the child and will address problems as they arise, before irreparable harm is done.

Pekowsky affidavit at 4, 6.

In an effort to predict the effects of setting guardian ad litem compensation at the statutory rates, both judges considered this proposition:

Guardians ad litem shall be chosen from a pool of attorneys who are willing to regularly accept appointments compensated at the [statutory] rate. However, the judge can, on a case by case basis, find that it is necessary to appoint and compensate guardians ad litem at the higher SCR 81.02 rate.

*Id.* Judge Pekowsky and Judge Moeser conservatively estimate that they would need to appoint and compensate guardians ad litem at the higher SCR 81.02 rate in at least 60 to 70 percent of cases, respectively.[12] Both

_____

[12] In an effort to predict what a pool of attorneys willing to accept guardian ad litem appointments regularly at the statutory rate might look like, both judges consider three "pools" of attorneys. These three pools consist of those attorneys who regularly accept private bar public defender appointments to

recognize that to compensate guardians ad litem at the higher SCR 81.02 rate they must make appropriate findings. Judge Pekowsky notes that conducting hearings in a substantial number of cases to make such findings would "represent a significant challenge to my ability to effectively handle my case load," and result in delays which "would work untold hardship on the children involved and would frequently impose harsh consequences on their parents as well."

The second set of affidavits comes from thirty-two attorneys who have been appointed as guardians ad litem by Dane county courts on a non-contract basis. All of these attorneys, who collectively represent almost the entire universe of the attorneys who have been so appointed over the past several years, state that they would no longer regularly accept appointments if compensation were set at the statutory levels. They point out that the statutory compensation rate would not cover their overhead costs and would be far less than what they normally charge private clients for guardian ad litem work.

The third set of petitioners' affidavits is from ten of the twelve attorneys who have, since September 1, 1992, contracted with Dane county to provide guardian ad litem services in paternity, guardianship, and CHIPS (Child in Need of Protection or Services) cases in the Dane county circuit courts.

The current contract provides for a total of nine "slots," with six attorneys contracting for a full "slot" and six attorneys contracting for a half "slot." Under the current contract, each attorney with a full "slot" receives approximately $2,050 per month in compensa-

represent (1) children over the age of 12 in juvenile court cases, (2) parents in juvenile court cases, and (3) defendants in criminal cases.

tion and is assigned 24 CHIPS cases each year, along with a proportionate share of paternity and guardianship cases.

The realized hourly rate of compensation under this contract has apparently ranged from $40 to $60, which is less than the rate set in SCR 81.02 but higher than the rate set in sec. 977.08(4m), Stats. These contract attorneys all state that they would not join a pool of attorneys willing to accept guardian ad litem appointments at the statutory rate.[13]

The respondents, on the other hand, present affidavits addressing the issue of "whether a compelling need actually exists to override the statutory rates." Respondents Dane County and Richard Phelps' Motion for Leave to File Response Affidavits, 2. The respondents first point out that many of the thirty-two guardians ad litem who affirmed that they would not accept court appointments at the statutory rates are nonetheless willing to accept public defender cases at those same rates.[14] The respondents thus imply that although the current court-appointed guardians ad litem deny it, they might in fact be willing to accept appointments at the statutory rates.

---

[13] Attorneys who contract to provide guardian ad litem services fall within SCR 81.02(1m). No one argues in the cases at bar that the legislature intended the statutes governing compensation of court-appointed counsel from public funds to interfere with counsel's ability to contract for the amount of compensation to be paid.

[14] Fourteen of the thirty-two guardians ad litem who submitted affidavits in support of the petitioners are listed as being on active status as private attorneys accepting appointments to serve as public defenders. An additional eleven are also listed but are on inactive status. Affidavit of Sheila Olig, financial specialist for the State Public Defender program, 1–2.

The respondents further provide thirty-two resumes or letters of inquiry received in response to an advertisement in the August, 1993, Dane County Bar Association Newsletter for guardian ad litem "slots" in the Dane county contract program, implying that qualified attorneys in Dane county would serve as guardians ad litem at less than the rate set in the Supreme Court Rules. Of the thirty-two, twenty-three appear to have experience in either family or juvenile law, and many have previously received guardian ad litem appointments. Three law firms also offered to contract for a slot.[15]

After carefully examining the affidavits, we conclude that the petitioners have proven that in certain cases a circuit court may not be able to appoint appropriate counsel if compensation is set at the statutory maximum. However, we also conclude that the petitioners have not proven beyond a reasonable doubt that the statutorily established rate for guardian ad litem compensation will unduly burden or substantially interfere with the judiciary's ability to appoint counsel.

As the record reflects, it is possible, even probable, that setting guardian ad litem or special prosecutor compensation at the statutory rate would prevent many well-qualified attorneys from accepting appointments. However, the record also shows that qualified attorneys are apparently willing to contract to provide guardian ad litem services at realized hourly rates of

---

[15] One associate at a Madison firm offered her services plus the services of six attorneys in her firm, who would serve as "back-up attorneys," providing expertise as necessary. Another firm offered the services of three attorneys, all of whom had previously received guardian ad litem appointments.

compensation that are less than the rate specified in SCR 81.02.

We appreciate Judge Pekowsky's and Chief Judge Moeser's respective estimates that to obtain qualified guardians ad litem in their courts they would need to exceed the statutory rates of compensation in at least 60 or 70 percent of cases. Nevertheless, this percentage does not meet the high burden of proof necessary to render a statute unconstitutional as unduly burdening or substantially interfering with the judiciary's power of appointment. So long as courts retain the ultimate authority to compensate court-appointed counsel at greater than the statutory rates when necessary, there is no showing generally of undue burden or substantial interference. We conclude, as did the parties, that the courts retain the ultimate authority to determine the amount of compensation for court-appointed counsel necessary to ensure effective administration of justice.

■■

In determining compensation for court-appointed guardians ad litem and special prosecutors, courts should endeavor to follow the statutory fee schedule. When exercising its inherent authority to compensate court-appointed counsel at greater than the statutory rate to secure qualified and effective counsel for a case before it, a circuit court must articulate a clear and compelling need for using its inherent authority in that particular case. The circuit court is in the best position to determine whether it can retain court-appointed counsel at the statutory rate or whether a particular case requires the services of an attorney with special experience or expertise and that such an attorney cannot be retained at the statutory rate.

While we do not view a full-fledged hearing as necessary in every such case, we require that a circuit court make a record showing that the circuit court is unable to obtain qualified appointed counsel at the statutory rate. This requirement balances the intentions of the people as spoken through the legislature with the intentions of the people expressed in the constitution's creation of the judiciary.

## VI.

We now turn to the alleged conflict between SCR 81.01 and the fee-setting statutes. SCR 81.01 plainly states, *"Notwithstanding any provision of the statutes . . .* the court appointing the attorney *shall* fix the amount of his or her compensation in such sum as the supreme court has specified in SCR 81.02." (Emphases added.) The petitioners argue that the phrase "notwithstanding any provision of the statutes" manifests the court's intent to pre-empt *any* legislative enactment that sets fees for court-appointed attorneys. Additionally, the petitioners argue that the directive "shall" is mandatory; therefore, when SCR 81.01 applies, as it does here,[16] the appointing court must set the attorney's fees at the rate specified in SCR 81.02.

The drafting history of SCR 81.01, however, belies the rule's straightforward language. We conclude that

---

[16] SCR 81.01 applies to both cases considered here. SCR 81.01 applies "in all cases where the statutes fix a fee and provide for the payment of expenses of an attorney to be appointed by the court. . . ." The statutes fix a fee for court-appointed guardians ad litem and special prosecutors. *See* secs. 48.235(8), 48.996, 767.045(6), 757.48, 880.331(8), and 891.39(1)(b), Stats. 1993–94, relating to guardians ad litem, and sec. 978.045, Stats. 1993–94, relating to special prosecutors.

neither the phrase "[n]otwithstanding any provision of the statutes" nor the word "shall" evidences the court's intent to preempt legislative fee-setting statutes enacted after SCR 81.01 was adopted.

The language of SCR 81.01 is derived from a legislative enactment. Section 256.49, Stats. 1957, later renumbered sec. 757.49, Stats. 1979–80, declared that the courts shall fix the fees for court-appointed attorneys at customary rates for comparable services, "notwithstanding any other provision of the statutes."

> **Section 256.49. Compensation of attorneys appointed by court.** *Notwithstanding any other provision of the statutes,* in all cases where the statutes fix a fee and provide for the payment of expenses of an attorney to be appointed by the court to perform certain designated duties, the court appointing the attorney *shall,* after the services of the attorney have been performed and the disbursements incurred, fix the amount of compensation for the services and provide for the repayment of disbursements in such sum as the court shall deem proper, and which compensation shall be such as if customarily charged by attorneys in this state for comparable services. (Emphases added.)

Section 256.49 was enacted at the request of the State Bar of Wisconsin. The objective of the statute was to replace the various and often outdated statutes relating to the compensation of court-appointed attorneys with one standard of customary fees. *Door County v. Hayes-Brooks,* 153 Wis. 2d 1, 23–24 n.4, 449 N.W.2d 601 (1990) (Abrahamson, J. concurring). This objective accounts for the legislature's use of the phrase "[n]otwithstanding any other provision of the statutes." The phrase refers to statutes then in existence. While the statute used the word "shall," that statute gave the

court discretion in setting the amount of fees for court-appointed counsel.

When the supreme court adopted SCR 81.01, it characterized the rule as an "equivalent provision" of sec. 757.49, Stats. 1979–80. The court adopted the phrase "[n]otwithstanding any provision of the statutes" and the word "shall" directly from sec. 757.49.[17] Construing these elements of SCR 81.01 in the manner the petitioners urge would mean that the court was invalidating any future legislation and that the legislature could never enact laws regulating fees for court-appointed counsel to be paid from public funds. Such an interpretation would not render the SCR *equivalent* to sec. 757.49, a provision the legislature could change.

For the reasons set forth above, we conclude that the phrase "[n]otwithstanding any provision of the statutes" does not indicate an intent by the court to pre-empt future legislative enactments setting fees for court-appointed counsel. SCR 81.01 is simply a restatement of the courts' long-established authority to compensate court-appointed counsel at whatever rate they deem necessary to ensure the effective adminis-

---

[17] As originally drafted, SCR 81.01 was identical to the statute. However, before being adopted, the rule was redrafted to be reconciled with SCR 81.02. *Door County v. Hayes-Brook,* 153 Wis. 2d 1, 26, 449 N.W.2d 601 (1990) (Abrahamson, J. concurring). Specifically, the words "in such sum as the court shall deem proper, and which compensation shall be such as is customarily charged by attorneys in this state for comparable services" were replaced with the words "in such sum as the Supreme Court has specified in SCR 81.02." See Memo from Bruce Feustel, Senior Legislative Attorney, LRB Rule 91–4, 2/9/79, in the file on the Supreme Court Rules, at the Office of the Judicial Council, Madison, Wisconsin.

tration of justice, regardless of a rate set in a statute or an SCR. This interpretation conforms to our cases, in which we declared that a circuit court may exceed the SCR 81.02 mandatory rate of compensation when necessary to obtain counsel, *Door County v. Hayes-Brook,* 153 Wis. 2d 1, 13, 449 N.W.2d 601 (1990), and may also, in its discretion, reduce total compensation of counsel, *In Matter of Estate of Trotalli,* 123 Wis. 2d 340, 358–59, 366 N.W.2d 879 (1985).

To summarize, we conclude that courts have the power to set compensation for court-appointed attorneys and that courts are the ultimate authority for establishing compensation for court-appointed attorneys. Accordingly we uphold the validity of SCR 81.01 and 81.02.

We conclude that the statutes in issue are facially constitutional and fall within the area of power shared by the judiciary and the legislature. The petitioners have not proven beyond a reasonable doubt that the statutes unduly burden or substantially interfere with the work of the courts.

We further conclude that a circuit court should abide by the statutes when it can retain qualified and effective counsel for cases before it at the rate established by statute. A circuit court should, however, depart from the statutory fee schedule and order compensation at the rate established in SCR 81.01 and 81.02 or at a higher rate when necessary to secure qualified and effective counsel for a case before it. When a circuit court concludes in a case that it must order compensation in excess of the statutory fee schedule to secure qualified and effective representation and to ensure the effective administration of justice, it must set forth its reasons on the record to facilitate review.

Finally we conclude that guardians ad litem and special prosecutors to be paid from public funds and appointed by a court prior to the announcement of this rule shall be compensated according to SCR 81.01 and 81.02. We therefore order Dane county and the Department of Administration to compensate the guardians ad litem and special prosecutor appointed by the circuit courts prior to the effective date of this decision at the rates specified in SCR 81.01 and 81.02, or at the rates specified by the circuit court in each case, for the duration of those appointments.

*By the Court.*—Rights Declared.